**Rayne J. FARRELL, Plaintiff,**

v.

**POTOMAC ELECTRIC POWER COMPANY, Defendant.**

Civ. A. No. 84–3254.

United States District Court, District of Columbia.

June 10, 1985.

Margaret A. Beller, Washington, D.C., for plaintiff.

Susan S. Sauntry, Washington, D.C., for defendant.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiff filed this action pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* She contends that the defendant discriminated against her because of her race (black) and her sex.

Plaintiff alleges that she was employed by defendant for a period of nine years and that on or about May 1, 1983, she was involved in an automobile accident which resulted in her hospitalization for serious bodily injury. She states that, by virtue of her employment with the defendant, she was entitled to health benefits that included medical coverage and similar pay benefits and that the defendant demanded medical records from the plaintiff which it did not demand of other persons similarly employed, persons who are male caucasians. Complaint ¶ 9. She further contends that the defendant denied her medical and sick pay benefits because of her race and sex and that the defendant retaliated against her by suspending her and thereafter terminating her employment on August 25, 1983.

The case is now before the Court on defendant's motion for summary judgment.

### I

The underlying facts are as follows: The plaintiff was employed by the defendant as a Customer Service Representative in the Customer Credit Department for approximately nine years. Defendant's Statement of Undisputed Facts (Defendant's Statement) ¶ 1. On or about May 1, 1983, she was involved in an automobile accident in which the driver of the other automobile was killed. *Id.* ¶ 2. As the result of that accident, the plaintiff received serious injuries for which she was hospitalized. *Id.* ¶ 3. The plaintiff applied for and received such pay as was provided for by Article 13 of the Agreement between the defendant, Potomac Electric Power Company (PEPCO) and Local 1900 of the International Brotherhood of Electrical Workers (Agreement). *Id.* ¶ 4. and Motion Exhibit 2 (Wolverton Affidavit, Attachment E.)

Shortly after the accident, a PEPCO employee read a newspaper article which reported that plaintiff was intoxicated while driving on the day of the accident. *Id.* ¶ 5. On July 13, 1983, the plaintiff was contacted by a representative of the defendant and told to release the medical records containing her level of intoxication at the time she was taken to the emergency room after the accident. *Id.* ¶ 6. Mr. Wolverton, the Manager of Industrial Relations at PEPCO was advised by one employee of PEPCO that a newspaper article had reported that the plaintiff had been drinking at the time of the accident, and another employee had reported that her husband had been at the scene of the accident and had seen "a lot of beer cans" there.[1] The plaintiff was given until July 18, 1983, to produce the necessary report or to sign a release which

---

1. The statements were made on or about May 2, 1983, and would be admissible, not for the truth of the statements, but because, based upon those statements, the defendant requested the plaintiff to furnish any medical reports concerning the level of her intoxication at the time she was

would allow the defendant to have access to the report. Wolverton Affidavit ¶ 6. Mr. Wolverton spoke with the union representative on July 18, 1983, and explained why PEPCO requested the report. *Id.* ¶ 7. When the plaintiff did not sign the release or produce the report by July 18th her disability pay was discontinued. *Id.* ¶ 8. The Union filed a grievance on July 19, 1983, in which it protested the termination of disability pay and on July 20, PEPCO suspended the plaintiff for one day for her continued refusal to sign a medical release. *Id.* ¶ 9 and Attachments B and C. On July 28, 1983, Wolverton spoke with the plaintiff on the telephone and explained why PEPCO was seeking medical records concerning her blood alcohol level on the day of the accident. He explained that under the terms of the collective bargaining agreement, employees are ineligible for sick leave if they are injured due to "general acts of misconduct". He advised her that if her state of intoxication led to her injury, PEPCO felt she would not be entitled to sick leave. *Id.* ¶ 10. The plaintiff became belligerent and stated that she was refusing to provide the information on the advice of her doctor and lawyer. Wolverton informed her that, due to her failure to supply the information, he was preparing a Notice of Disciplinary Action suspending her for three days. *Id.* ¶ 11.

On August 1, 1983, the plaintiff was suspended for three days and warned that she was likely to be terminated if she persisted in her refusal to provide the information. *Id.* ¶ 12 and Attachment D. PEPCO instituted its procedures for termination under Article 16 of the Agreement on August 17, 1983. Plaintiff was suspended for a period of five days during which she could seek a hearing. Such a hearing was held on August 23, 1983, at which plaintiff was represented by the Union. *Id.* ¶ 13. On September 2, PEPCO decided that the plaintiff should be terminated. *Id.* ¶ 14. The Union exercised its right to demand arbitration on September 9, 1983. *Id.* ¶ 15. On September 14, 1983, the plaintiff filed a charge of discrimination alleging that she had been discriminated against because of her race and sex. The Union demanded arbitration under the American Arbitration Association Expedited Labor Arbitration Rules on December 7, 1983. *Id.* ¶ 17.

Arbitration was held in September 1984, in a hearing that lasted five days, during which the arbitrator heard the sworn testimony of plaintiff, her supporting witnesses, and witnesses called by the defendant. *Id.* ¶ 18. On October 5 the arbitrator issued a decision finding that PEPCO had just cause to terminate the plaintiff due to her refusal to supply the medical information. *Id.* ¶ 19 and Attachment E.[2]

The company "frequently" asks employees to submit medical evidence in support of their claim for sick pay and other medical benefits, and it is believed that no other employee has refused to supply this information to the point where discipline was necessary. *Id.* ¶ 20.

Since the plaintiff's discharge, two new collection representatives have been employed by PEPCO, one is a black male and the other a white female. Whitehead Affidavit ¶ 3.[3] In July 1983, there were 33

brought to the emergency room. *See* Fed.R. Evid. 801. ("Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted",* (emphasis supplied by the Court)). Moreover, such evidence would not prejudice the plaintiff since the finder of fact would be entitled to hear the circumstances relating to the accident and the record of plaintiff's subsequent criminal trial and conviction on the charge of negligent homicide. Thus, there would be no basis to exclude the statements under Fed.R.Evid. 403.

2. PEPCO set forth three reasons for the discharge, including (1) plaintiff's refusal to provide medical records, (2) her threats to her supervisor and (3) her attempts to interfere with the discontinuation of customer service in a business in which she had a personal interest. Wolverton Affidavit Attachment E. The arbitrator felt that, insofar as the plaintiff's failure to furnish the requested information was concerned, PEPCO was within its right to discharge the plaintiff, thus the grievance was denied. The arbitrator did find that there was not just cause to discharge the plaintiff under the second and third claims.

3. William S. Whitehead, Jr., is the Manager, Customer Credit Department at PEPCO, and as such was the plaintiff's supervisor from Decem-

blacks and 16 whites in PEPCO's Customer Credit Department. In July 1984, there were 33 blacks and 17 whites in the same department. Moreover, in July 1983, there were 25 males in that department, of which 17 were black and 9 white, and in July 1984, there were 27 females in the department, of which 17 were black and 10 were white. *Id.* ¶ 4.

At the time the plaintiff was present at the fact finding conference held by the Equal Employment Opportunity Commission, she denied that she had been drinking at the time of the accident which resulted in her injuries. *Id.* ¶ 5. During the nine years the plaintiff was employed by PEPCO, she received at least fourteen formal disciplinary actions for various kinds of conduct involving dishonesty, rudeness and excessive absenteeism. *Id.* ¶ 6.

The plaintiff's problems did not end with the termination of her job. She was tried and convicted of negligent homicide with an automobile and on March 8, 1985, she was sentenced to serve not less than 18 months nor more than five years on that charge. Statement ¶ 19 and Motion Exhibit 1 (Transcript of Sentencing Hearing before Judge Joseph M. Hannon, Associate Judge, Superior Court of the District of Columbia). Evidence presented at her trial established that the plaintiff caused the accident and that she had a blood alcohol content of .259 upon admission of the hospital. *Id.* ¶ 20. Throughout the trial, and the arbitration proceeding, the plaintiff denied that she was drunk at the time of the accident. *Id.* Her blood alcohol level of .259 was five times the quantity of alcohol as would be prima facie case that the plaintiff was driving under the influence of intoxicating liquor. D.C. Code Ann. § 40–717.1 (Supp. 1984).

The judge in the criminal case noted that the plaintiff approached a controlled intersection and that at an "outrageously excessive speed" she "thundered into the intersection at speeds in excess of forty to forty-five miles per hour to bring about the death of Mr. Leroy Beasley". The court noted that "that's the grossest type of

ber 1978 to August 1983 when the plaintiff was

wanton and reckless behavior". Transcript at 5.

The plaintiff has filed an opposition to the motion and has incorporated her statement of disputed facts in the opposition. Her statement is discussed below. *See* Part III, *infra.*

## II

First, it should be noted that in determining whether the defendant is entitled to summary judgment, the Court considers only the issue of plaintiff's failure to produce the medical report, or in lieu thereof, a waiver allowing the defendant to obtain the report. The Court concludes that the other two grounds cited for termination before the arbitrator, namely, the alleged threat made to her supervisor, and her alleged attempt to interfere with disconnection of customer service, presents factual issues which would, if they were the only matters before the Court, prevent the granting of summary judgment. *See* Fed. R.Civ.P. 56.

It seems clear that the plaintiff would be able to establish a prima facie case if this matter went to trial. She was employed by PEPCO for nine years and obviously had the ability to perform her work. She was terminated from her employment in 1983, and she is a female and black. Thus, the question raised by the motion is whether she was terminated for reasons other than her sex and race, or whether she was accorded different treatment because of her race or sex, and if PEPCO contends she was terminated for valid reasons, whether that argument is merely a pretext for her discharge. Necessarily then, the Court must first determine whether the facts of this case presented valid grounds for her termination in the first instance.

It is conceded by plaintiff that she was involved in an automobile accident on May 1, 1983. Additionally, she was tried in a criminal proceeding and the jury found that she was at fault, that she was intoxicated, and that her negligence led to the death of

discharged. Whitehead Affidavit ¶¶ 1 and 2.

another person. The injury she suffered and for which she claimed sick leave and medical benefits resulted from the above accident.

When it was brought to the attention of PEPCO that the plaintiff may have been intoxicated at the time of the accident, and that her own conduct may have lead to her injuries, the company requested the medical report containing her level of intoxication at the time she arrived at the emergency room. The basis for that request was Agreement § 13.09 which provides:

No employees shall receive any sickness allowance when the following conditions exist:

(c) When the disability is caused or results from an intentionally self-inflicted injury or *other general acts of misconduct* (emphasis the Court's).

PEPCO had good cause to believe that the plaintiff's injuries were caused by her own acts of misconduct, that is, that the plaintiff was driving while drunk or intoxicated. Since the Agreement provides that where an injury or disability results from "acts of misconduct" the defendant is not required to pay benefits, it follows that the company was entitled to make a further inquiry of the plaintiff. Therefore, the defendant was within its rights to require the plaintiff to produce the medical report. There is no suggestion that that information was somehow privileged.

PEPCO did not act arbitrarily or unreasonably in requesting the information. Plaintiff was requested to furnish the information or a release therefore on July 13, 1983. The reason for the request was explained to her. Although she has contended that she was advised by her doctor and her lawyer not to furnish that information, nothing in the record supports that contention. Mr. Wolverton explained to the plaintiff that the information was necessary and he "asked her not to turn what might be a loss of sick pay into a cause for discharge by continuing to engage in insubordination by failing to provide the data" PEPCO required. Wolverton Affidavit ¶ 11. Plaintiff was also requested by written memoranda to provide the information. She re-

fused to do so. Under all of the above facts, PEPCO had the right to terminate her employment.

The Court concludes that absent a showing by plaintiff that the reasons given by PEPCO were only a pretext for terminating her, the defendant is entitled to summary judgment. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### III

PEPCO has provided an affidavit that demonstrates that the gender and race makeup of the Customer Credit Department did not change substantially after her termination. *See* Whitehead Affidavit (Motion Exhibit 3). Prior to her discharge, the Customer Credit Department consisted of 33 blacks and 16 whites, while after her discharge it consisted of 33 blacks and 17 whites. The same consistency, before and after, is found in the number of females employed in that department. Prior to her discharge there were 25 females in the department including 16 blacks and 9 whites, while after there were 27 females in the department, including 17 blacks and 16 whites. Whitehead Affidavit ¶ 4. Moreover, since the plaintiff's discharge, two new employees have been hired, one a black male and one a white female. *Id.* ¶ 3. The above figures appear to contradict any claim of either race or sex discrimination. But, those figures alone are not dispositive of the motion.

A review of the plaintiff's opposition to the motion reveals that she does not raise any factual issues in this case. In defending against the motion for summary judgment, the plaintiff may not rest upon the allegations or denials in her pleadings, "but [her] response [to the motion] by affidavit or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial". Fed.R.Civ.P. 56(e) (emphasis the Court's). In addition, the affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is com-

petent to testify to the matters stated therein". *Id.*

The plaintiff's affidavit does not measure up to the above requirements. She states that for at least two years the managers in her section attempted to discharge her because of her race and sex and that the disciplinary actions reported by Mr. Whitehead were pretexts for the actual reasons asserted as grounds for her discharge. Plaintiff Affidavit ¶ 1. Plaintiff's statement is no more than an allegation. It does not set forth "specific facts", and nothing in the affidavit demonstrates that she has personal knowledge of the facts or that such "facts" would be admissible in evidence.

Plaintiff states that she has never threatened any person, including her supervisors, and that "what I have said has been taken totally out of context". *Id.* ¶ 2. Her own statement is not clear and recognizes that it may be that her statements were taken out of context. The Court need not address this allegation, however, since as it has already observed, it has not considered the alleged threats as grounds for termination.

In the third paragraph of her affidavit, the plaintiff disputes that the action taken against her is the same as action taken against other persons, but this is no more than an allegation and without more does not raise a factual issue. Again, the plaintiff does not set forth specific facts and there is no basis to determine whether she has personal knowledge of those alleged facts and whether such allegations would be admissible in evidence. She also asserts that PEPCO should know "a caucasian male received benefits under the contract for alleged misconduct similar to that for which [she] was discriminated", but again, the statement does not comply with the requirements of Rule 56(e) and does not set forth specific facts, as for example, giving the name of the employee or the nature of the termination.

Finally, plaintiff states that she supplied medical certificates, but again she does not set forth the nature of the certificates supplied and when those certificates were supplied.[4]

■■■ The Court concludes that the plaintiff's affidavit fails to meet the requirements of Rule 56(e), and indeed, her affidavit is an illustration of the reasons for the requirement for specificity contained in the rule. All the plaintiff has done is to make additional allegations, but as Rule 56(e) clearly provides, such allegations are not enough and do not raise a factual issue.

### IV.

After giving careful consideration to the motion, the opposition thereto, the arguments of counsel and the record in this case, the Court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. It is clear that the defendant had just cause for requesting the medical report in question and it is also clear that when the plaintiff failed to furnish that reports or a release therefore, the defendant had the right to first suspend her and then terminate her. Nothing in the record supports the plaintiff's allegation that she was terminated because of either her race or her sex. Nothing in the record supports an allegation that the reasons given for her termination were a pretext for the real reasons.

Defendant also argues that since the plaintiff is now to be incarcerated, the relief she has requested may not be granted. For example, the plaintiff has requested reinstatement. The Court need not address that issue since the Court finds that, in any event, the plaintiff is not entitled to any relief in this case.

Defendant's motion for summary judgment will be granted and this case will be dismissed with prejudice.

Separate order has issued.

---

**4.** At oral argument, plaintiff's counsel stated that the certificates referred to in plaintiff's affidavit are not the subject medical reports.