Keith B. GRIMES, Plaintiff,

v.

DISTRICT OF COLUMBIA, et al., Defendants.

Civ. A. No. 84–3747.

United States District Court, District of Columbia.

March 19, 1986.

Keith B. Grimes, pro se.

Reginia Jackson, Washington, D.C., for plaintiff.

O. Gregory Lewis, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM OPINION
## AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff Keith B. Grimes brought suit against the District of Columbia and Anita Bellamy Shelton, Director of the District of Columbia's Office of Human Rights, ("defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982), and the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (1982). He claims he was discriminated against on the basis of his sex and national origin (West Indian) in that women and males not of West Indian origin were paid at a higher grade while performing essentially the same tasks as plaintiff. He further alleges that he was subjected to unlawful retaliation after filing a complaint of discrimination with the Equal Employment Opportunity Commission (EEOC). A three-day bench trial was held in the matter. For the reasons set forth briefly below, the Court finds that plaintiff has established a violation of the Equal Pay Act, but that his Title VII claims are without merit.

### I. *Background*

In August, 1981, plaintiff was hired as a full-time temporary employee in the District of Columbia's Office of Human Rights ("OHR"). A graduate of law school, he was employed as a paralegal specialist and received a grade DS–7 salary. As a temporary employee, plaintiff's tenure at OHR was based on appointments, typically of three months' duration, which could be renewed at the discretion of the director. On April 30, 1983, plaintiff's final appointment expired and was not renewed.

Grimes testified that at the time he was hired, four American males—Odis Quick, Julius Warthen, John Joyce and Jack Willingham—performed duties similar to his, but were paid at the DS–11 salary. Plaintiff admitted, however, that all four men presented cases to OHR's full Commission, a responsibility he did not share. In addition, all but Willingham were permanent, as opposed to temporary, employees.

In the fall of 1982, OHR hired three women as paralegal specialists. Gail Burgess, a member of the Maryland bar, and Sylvia Long, were employed at the DS–11 grade; Burgess presented cases to the full Commission. Theresa Jenkins was hired as an intern and received a DS–7 salary. Plaintiff testified that his office space and equipment were essentially the same as that provided the female paralegal specialists; indeed, he conceded that Long had less space than he.

In 1981, plaintiff's supervisor, Doris Ridgley, recommended that his first appointment be renewed. She also recommended, at the end of the 1981 fiscal year, that plaintiff be promoted to a DS–9 level as he was performing duties beyond his DS–7 grade, but defendant Shelton advised her that there were no funds available to promote anyone. Shelton, Ridgley and plaintiff met in the fall of 1982 to discuss plaintiff's workload in light of John Joyce's departure, and assigned plaintiff certain fire fighters cases. Grimes testified that at the meeting he asked about his recommended promotion and Shelton assured him that he would receive one; Doris Ridgley, however, testified that she remembered no such promise being made. At the time of his separation from OHR, plaintiff was still a grade DS–7. A classification review undertaken by OHR in April 1984, however, concluded that plaintiff's duties while a paralegal specialist entitled him to a DS–9 grade and salary.

Early in 1982, Ridgley received the first of several complaints concerning plaintiff's sexual harassment of women complainants. Ms. Nona McReynolds complained that Grimes had made advances towards her and asked that he be removed from her case. At the trial, McReynolds testified that plaintiff called her and told her he was the hearing examiner assigned to her case. According to McReynolds, Grimes said that he was sympathetic to her case and that he would like to meet with her; he arranged a lunchtime meeting on a street corner near his office and described himself so she would be able to recognize him. McReynolds testified that at the meeting plaintiff

asked her to join him for lunch and to go out with him, telling her that he would be more inclined to rule in her favor if she agreed. She declined and instead called Ridgley, who talked to plaintiff about the incident and warned him that such behavior was unacceptable. Grimes did not deny, either at trial or at the time of his discussion with Ridgley, that he had in fact met with McReynolds in the manner she described; he merely disputed her assertion that he would rule in her favor if she agreed to go out with him.[1] McReynolds testified that Grimes telephoned her two or three more times during the next few weeks. She again informed Ridgley, who took the matter to Ms. Anne Turpeau, OHR's Executive Assistant. Turpeau reprimanded Grimes verbally and removed him from McReynolds' case, but took no official action against him.

Shortly thereafter, Ridgley received another complaint from a woman at the District of Columbia's Office of Personnel. According to Ridgley, plaintiff visited that office in connection with an investigation he was conducting. Before he returned, Ridgley received a call from an employee who demanded to know what kind of person OHR had sent down to undertake investigations; she accused Grimes of being too familiar with her and found his behavior offensive. At trial, Grimes denied that he had made any such a field visit. Yet another incident occurred in April, 1982, which lead Ridgley to issue a formal reprimand. A complainant called OHR, identifying herself as a Ms. Willis, and spoke to plaintiff concerning a class action discrimination claim she wished to bring. At his suggestion she came down to OHR offices and met with plaintiff. After the visit she lodged a complaint with Ridgley, alleging that Grimes had asked her personal and irrelevant questions over the phone concerning her age and marital status, had "undressed her with his eyes" at the interview and was "using his job as an excuse

to come on to and meet women." DX 4. He denied the charges to Ridgley and at trial contended that he had been "set up." He testified that Ms. Willis never signed in at OHR offices, that the company she said she worked for had no knowledge of her, and that a private investigator he hired could find no trace of her in the area. He stated that Ridgley herself suggested, some time after she issued the reprimand, that she had reason to believe he had been set up. Ridgley, however, denied making any such statement. Finally, late in 1982, Ridgley received another complaint from an unidentified woman who claimed that Grimes had sexually harassed her at OHR offices when she came to discuss a case she wished to file.

Shortly before his separation from OHR in April 1983, plaintiff learned that the agency planned to hire three paralegals at a DS–11 level. He testified that he asked Shelton to inform him of the posting but that she did not. He nevertheless learned of the openings and submitted an application on the closing date, May 13, 1983, along with a letter from his law school stating that he graduated in the top third of his class. He inquired as to the status of his application shortly thereafter and was informed that the letter from his law school was not included in his file. He hand-delivered a copy of the letter on May 17. In June, he filed charges of discrimination against OHR with the Equal Employment Opportunity Commission. He received a letter from OHR on July 7, inviting him to attend a group interview for the paralegal position that same day. At the meeting, Shelton and Turpeau interviewed six or seven applicants, asking each the same questions. After the interview, Shelton asked each applicant to check his or her application file to make sure it was correct. Plaintiff's was not among the stack of files; he notified Shelton, who told him not to worry, it was probably in the office. In

---

**1.** Through cross-examination and his own rebuttal testimony, plaintiff attempted to cast doubt upon McReynolds' credibility by challenging her description of the clothing he wore to the meeting and the exact street corner at which they rendezvoused. These differences, however, were mere quibbles, and in no way undermined Ms. McReynolds' entirely credible testimony.

October 1983, he learned through a friend that Theresa Jenkins was awarded the job.

## II. *Analysis*

### A. *The Equal Pay Act Claim*

 Under the Equal Pay Act, plaintiff must show that an employer pays different wages to employees of the opposite sex who are doing equal work on jobs, the performance of which requires equal skill, effort and responsibility under similar working conditions. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). The burden then shifts to the defendant to demonstrate that any such wage differential is justified under one of the Act's four enumerated exceptions. *Id.* at 196, 94 S.Ct. at 2229. Plaintiff testified at trial that two women—Gail Burgess and Sylvia Long—were hired as paralegal specialists after his appointment and were paid higher wages than he. His own testimony demonstrated that he did not perform the same work as Burgess, since she presented cases to the full Commission while he did not. However, in the case of Long, defendants did not challenge plaintiff's claim that she performed essentially the same tasks as he. Moreover, defendants' own audit of plaintiff's classification revealed that he should have been paid a DS-9 salary. Defendants in no way justified the failure to pay plaintiff a salary commensurate with his duties and responsibilities while a paralegal specialist, nor did they rebut his showing that at least one, and in all likelihood other female paralegal specialists did in fact receive appropriate compensation for their work. While it may be, as defendants contend, that the improper classification of plaintiff's position and salary were simply clerical errors, this is not a valid defense to an action brought under the Equal Pay Act; the statute lays down *per se* rules making the defendants' intent irrelevant for purposes of establishing a violation. Defendants here have essentially conceded that plaintiff should have been paid a DS-9 salary, yet they have never compensated him for the wages he lost due to the improper classification. As a result, plaintiff has established an Equal Pay Act violation, and is entitled to receive the differential between a DS-7 and DS-9 grade during the time he was employed at OHR.

### B. *The Title VII Claims*

 Plaintiff also contends that defendants' failure to pay him the same salary that American males and female employees received for performing the same work amounts to a violation of Title VII as well. Unlike an Equal Pay Act claim, however, in a Title VII action, "[p]roof of discriminatory motive is *critical.*" *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977) (emphasis supplied). Following roughly the elements of a prima facie case of discrimination set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), plaintiff attempted to show that he was a member of a protected class or classes (West Indian and male); that he was qualified for, and indeed performed the functions of, a DS-11; and that women and American males of similar qualifications, performing similar duties, received a higher wage than he did. Plaintiff's showing with respect to his Equal Pay Act claim discussed above is sufficient to discharge his burden of making out a prima facie case of sex discrimination; however, he completely failed to carry his burden on his claim of discrimination based on national origin.

 Both plaintiff and Ms. Georgia Steward, an OHR employee called as a witness by plaintiff, testified that they never heard any of the supervisory staff at OHR speak derogatorily of either males or West Indians. Plaintiff further testified that his work space and equipment was essentially the same as that of his co-workers, both male and female. He demonstrated that at least one woman, Sylvia Long, performed duties comparable to his and received a higher salary. This evidence, though hardly compelling, satisfied the relatively low threshold showing required under *McDonnell Douglas* for purposes of

establishing a prima facie case. His own testimony, however, revealed that he did not perform the same tasks as the four American males whom he contends were compensated at a higher rate for the same work. Odis Quick, Julius Warthen, John Joyce and Jack Willingham all presented cases to the full Human Rights Commission; plaintiff, by contrast, served as a hearing examiner and, in that capacity, issued findings of probable cause—a task clearly not commensurate with representing cases before the full Commission. Moreover, all but Willingham were members of a state bar and thus possessed qualifications beyond those of plaintiff. While plaintiff insists that admission to the bar was not a prerequisite to performing the duties of a DS–11, it is not unreasonable for an employer to compensate an employee who possesses such a qualification at a higher rate. Certainly such differentiation is not evidence of discriminatory animus. In short, plaintiff simply failed to establish any disparate treatment of, or discrimination towards, West Indians by the defendants.

■ As plaintiff made out a prima facie case of sex discrimination, albeit a weak one, the burden shifted to defendants to demonstrate a legitimate, nondiscriminatory business reason for the difference in pay between plaintiff and at least the one female employee. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendants explained that the salary discrepancy was simply a clerical error. While such an explanation is perhaps not the most traditional of "business reasons," it is sufficient to negate the rather weak inference of discriminatory intent raised by plaintiff's prima facie showing. Plaintiff's immediate supervisor, Doris Ridgely, recommended that plaintiff be promoted to a DS–9 grade based on his performance and duties. She testified that defendant Shelton advised her at the time that budgetary constraints precluded any promotions at the agency. This explanation is consistent with the testimony of Odis Quick, a witness called on plaintiff's behalf, who described a reduc-

tion-in-force undertaken at OHR around the same time that plaintiff sought his promotion. Moreover, the agency has since confessed to its classification mistake. Had plaintiff offered further circumstantial evidence of discriminatory animus, defendants' proffered reason might appear to be pretextual. But plaintiff himself testified that he never heard any supervisory staff make derogatory remarks about males, and that his office space and equipment were the same as that of his female co-workers. In short, plaintiff simply failed to demonstrate that the pay differential was anything other than a clerical error. Plaintiff bore the ultimate burden of proving discriminatory animus by defendants, *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The Court finds he did not discharge that burden.

■ Finally, plaintiff claims that OHR's failure to hire him as a DS–11 paralegal specialist in the summer of 1983 constituted unlawful retaliation for his having filed a claim of discrimination against the agency. The *McDonnell Douglas* framework is applicable to claims of unlawful retaliation as well as those of discrimination. *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir.1984). Plaintiff must show that (1) he engaged in a statutorily protected activity; (2) that the employer took an adverse employment action against him; and (3) that there is a causal connection between the two. *Id.* If he carries this relatively light burden, defendants must advance legitimate, nondiscriminatory reasons for the adverse actions. The burden then shifts to plaintiff to show by a preponderance of the evidence that the proffered reason is but a pretext. *Id.*

■ Plaintiff filed his claim of discrimination with the EEOC in June, 1983. He had previously applied for the DS–11 position in May and was interviewed, along with several other applicants, in early July. He testified that OHR staff were aware of his claim prior to the interview; he stated that during a visit to OHR a secretary mentioned to him that she had seen his

complaint in the office, as the EEOC had forwarded it to OHR for investigation. Although it is not altogether clear that Shelton or Turpeau knew of the complaint, the Court finds that plaintiff offered sufficient evidence to establish a causal link and thereby make out a prima facie showing of retaliation.

In response, defendants argued that plaintiff's prior history of sexual harassment rendered him, in essence, unfit for the position. They offered strong and consistent evidence that plaintiff had, during his tenure at OHR, engaged in highly unprofessional, indeed potentially illegal, conduct. By his own admission, plaintiff used his job as a hearing examiner to arrange a street corner meeting with a complainant and asked her out on a date. Ms. McReynolds, whom the Court found to be a highly credible witness, testified that plaintiff told her he would be more willing to rule in her favor if she accepted his offer of a date, and that after she complained to his supervisors, he called her on at least two or three other occasions. His attempts to characterize the street meeting as an innocent, if misguided, encounter, and his later calls as purely professional follow-up work, were wholly unpersuasive. Similarly, the Court cannot credit plaintiff's explanation that the complaint lodged by Ms. Willis was a "set up." Doris Ridgley testified, again quite credibly, that she did not consider the complaint a fabrication, and that she did not so advise plaintiff. Moreover, there is little reason to believe that plaintiff was in fact set up. Plaintiff offered no evidence to show that anyone at OHR harbored any discriminatory animus towards him based on his sex; indeed, prior to the complaints about his behavior, Ridgley, his immediate supervisor, had expressed approval of his work. In any event, even if the incident with Ms. Willis were some sort of ploy, Ridgley herself clearly believed the complaint to be legitimate and had ample reason, based on the earlier complaints she had received, to treat it as a serious matter. In sum, defendants offered evidence of at least six different acts of sexual harassment committed by plaintiff, and the record is clear that Shelton and Turpeau were well aware of these incidents. Under these circumstances, it would have amounted to a dereliction of their duties for the directors of an agency charged with investigating and prosecuting claims of employment discrimination to hire an applicant with plaintiff's background to handle complaints brought by women. The Court thus finds that defendants had a legitimate, nondiscriminatorty business reason for refusing to hire plaintiff as a DS–11 paralegal specialist and that his claim of unlawful retaliation must therefore be dismissed.

For all the foregoing reasons, judgment will be entered in favor of plaintiff in the amount of three thousand nine hundred-sixty dollars ($3,960), said figure representing the gross amount of back wages to which plaintiff is entitled under the Equal Pay Act as a result of defendants' improper classification of plaintiff's duties and responsibilities.[2] In addition, judgment will be entered in favor of plaintiff for an award of a lump sum annual leave payment benefit, the amount to be determined as the differential between the lump sum payment that plaintiff received as a grade DS–7 and that which he would have received had he been properly classified as a DS–9.

Finally, plaintiff's claims of unlawful discrimination and retaliation will be dismissed.

### JUDGMENT

In accordance with the Memorandum Opinion and Order issued this date, judg-

---

**2.** Defendants suggest, through the affidavit of Venessa Traylor, Chief of the Classification Branch of the District of Columbia's Office of Personnel, that certain deductions should be made from this figure for state and federal taxes. Despite repeated inquiries and requests for this information by the Court, defendants have failed to provide the amount of any such deductions. The Court, therefore, will award the gross amount of back wages, and leave with plaintiff the responsibility of discharging any tax liability that might attach to such an award.

ment is hereby entered in favor of plaintiff, Keith B. Grimes, and against defendants, District of Columbia and Anita Bellamy Shelton, in the amount of three thousand nine hundred-sixty dollars ($3,960), said figure representing the gross amount of back wages to which plaintiff is entitled under the Equal Pay Act as a result of defendants' improper classification of plaintiff's duties and responsibilities. In addition, judgment is hereby entered in favor of plaintiff, and against the above-named defendants, for an award of a lump sum annual leave payment benefit, the amount to be determined as the differential between the lump sum payment that plaintiff received as a grade DS–7 and that which he would have received had he been properly classified as a DS–9. Finally, judgment is entered in favor of defendants, and against plaintiff, on plaintiff's claims of unlawful discrimination and retaliation.