**Lucille PAUL, Plaintiff,**

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Defendant.**

**Civ. A. No. 87–0044.**

United States District Court, District of Columbia.

Oct. 13, 1988.

T. Clarence Harper (argued), Williams & Harper, Washington, D.C., for plaintiff.

Daniel A. Masur (argued), Virginia D. Green, Reed, Smith, Shaw & McClay, Washington, D.C., and Jane Gale Fitts, Federal Nat. Mtg. Ass'n, Washington, D.C. (with him on the brief), for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

In this action, brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, the plaintiff, Lucille Paul, alleges that her former employer, the defendant Federal National Mortgage Association ("FNMA"), discriminated against her on the basis of race, gender, and national origin by denying her training, denying her promotions, giving her a false performance evaluation, and involuntarily transferring her to another position within FNMA. Further, plaintiff alleges that her employment was terminated in retaliation for commencing grievance proceedings regarding the involuntary transfer. Defendant has pending three motions: a motion in limine to resolve several evidentiary matters before trial, a motion for attorney's fees, and a motion for summary judgment.

## I. FACTUAL SUMMARY

Plaintiff is a black female, who emigrated to the United States from Grenada, West Indies in 1968, and who was employed by defendant FNMA from April 9, 1973 until her termination on March 27, 1985. Between 1973 and early 1984, plaintiff consistently received above average performance evaluations from her superiors at FNMA, and had been promoted several times from her entry level position of Keypunch Operator (Level 14) to her selection as an Accounting Technician (Level 20) in the Payroll Unit in June 1981.

Subsequent to her selection as an Accounting Technician, plaintiff unsuccessfully applied for nine more promotions during the period 1982 through 1985. Plaintiff does not challenge the qualifications of those selected for the positions, and either was not herself qualified for the positions or was not as qualified as the persons selected. Furthermore, of the persons selected in lieu of plaintiff, the vast majority were black and/or female, and the selecting officials included black, female, and minority supervisors.

As an Accounting Technician, plaintiff's primary responsibility involved the preparation of biweekly payrolls for the FNMA Home Office. Until 1984, much of the inputs were done manually. In early 1984, the Payroll Unit converted to a computerized payroll system. Each of the Payroll Technicians was observed operating the new keying system, and the employee who most quickly mastered the keying techniques, and who happened to be the newest member of the Payroll Unit and hence most easily spared, was selected for special training and to assist the computer consultants in the conversion. Notably, the employee selected was a white female. While plaintiff was not selected to assist in the conversion, she did later receive the same computer training, and concedes that she received not only all of the training necessary to perform her duties, but also received special training and educational assistance from the defendant.

In the latter half of 1984, plaintiff's superiors noticed that her duty performance was markedly declining. She was making more errors and needing more overtime to do the same job. Even after her superiors transferred part of her workload to a new Accounting Technician, plaintiff's overtime hours did not decrease appreciably. Plaintiff's superiors concluded that plaintiff's declining performance was attributable to job fatigue and burnout, notwithstanding plaintiff's denial that she was "burnt out." Plaintiff's 1984 performance evaluation, with inputs from three superiors, including a white female, a white male, and a black male, expressed dissatisfaction with the following aspects of her job performance: the quantity and frequency of her errors, her failure to develop or implement a self-check to minimize those errors, the time required to complete her assigned tasks, her failure to reduce her overtime hours despite a substantial reduction in her workload, and her repeated failures to follow departmental rules regarding overtime, to wit, obtaining approval in advance and having a supervisor present during overtime. As a result of this rating, plaintiff was laterally transferred to another position with the same job title and rate of pay, but located in the

Accounts Payable Unit of the Corporate Accounting Department. Plaintiff objected to the transfer, and filed an employee grievance, alleging that her lateral transfer was based on her race, sex and/or national origin. FNMA's internal investigation of plaintiff's grievance concluded that the transfer was not discriminatory, and plaintiff was ordered to accept the reassignment. Plaintiff adamantly refused to accept the transfer, and was fired for insubordination on March 27, 1985. The day before her termination, and amended subsequently, plaintiff filed an administrative charge with the Equal Employment Opportunity Commission (EEOC), making the same allegations as in the present Complaint. Following an investigation, on October 10, 1986, the EEOC determined "that there is not reasonable cause to believe that this allegation is true."

## II. PROCEDURAL POSTURE

Plaintiff filed this action on January 9, 1987. On February 18, 1987, the Court entered a pretrial schedule agreed to by the parties, closing pretrial discovery on July 31, 1987 and setting the matter for trial on November 9, 1987. As the trial was about to begin on November 9, 1987, and without any advance notice to the Court or opposing party, plaintiff stood and announced to the Court that she was dissatisfied with her counsel and would like a delay to seek replacement counsel. The Court attempted to resolve what appeared to be a minor dispute between plaintiff and her counsel about the calling of two previously undisclosed witnesses to testify on plaintiff's behalf. However, plaintiff persisted in her request for a delay, albeit acknowledging that by doing so she could become liable for defendant's attorney's fees and costs, then estimated to exceed $20,000. The Court granted plaintiff's request, but expressly left open the possibility of a later award for fees and costs against plaintiff. Following defendant's Motion for Summary Judgment, the Court *sua sponte* vacated the rescheduled trial date of September 13, 1988 and set a motions hearing on the following day.

## III. DEFENDANT'S MOTION IN LIMINE

On October 27, 1987, defendant filed a motion in limine to simplify and abbreviate the trial by disposing of several evidentiary matters prior to the scheduled November 9, 1987 trial. Because of the Court's disposition herein of defendant's Motion for Summary Judgment, it is not necessary to consider further defendant's Motion in Limine.

## IV. DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES

On November 24, 1987, defendant moved for plaintiff and/or her attorney to be ordered to pay the reasonable expenses, including costs and attorney's fees, incurred by the defendant in preparing for the November 9, 1987 trial as well as the instant motion. Defendant notes that it expended "considerable time and effort preparing for a trial that was postponed ten months due to plaintiff's eleventh hour dissatisfaction with her counsel and lack of preparation for trial." In response, plaintiff has neither attempted to explain nor excuse her egregious delay in moving to discharge her counsel, but instead relies on the assertion that "[t]he right to an attorney of one ['s] choice is so engraved [sic] into our judicial system as to be beyound [sic] question." Even assuming plaintiff is correct, however, it still does not insulate her from the imposition of sanctions for engaging in dilatory tactics.

The imposition of sanctions against litigants and counsel for employing dilatory tactics to perpetuate litigation is implicitly allowed by Rule 11 of the Federal Rules of Civil Procedure, and expressly permitted by 28 U.S.C. § 1927 (1983). *Johnson v. Secretary, Dept. of H. & H. Services,* 587 F.Supp. 1117, 1121 (D.D.C.1984) (court has discretion to impose sanctions on attorney who causes needless delay); *EEOC v. Appleton Electric Co.,* 586 F.Supp. 1108 (N.D. Ill.1984) (imposing sanctions against defendant for unnecessary delays in administrative investigation). The Federal Rules Advisory Committee notes that Rule 11, as amended, "build[s] and expand[s] the eq-

uitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation." Fed.R.Civ.P. 11, advisory committee notes. Judges in this Circuit have also held that the litigant, as well as or in lieu of counsel, may be liable for fees and costs, where it is the litigant that causes the unnecessary delay. *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178 (D.C.Cir.1980); *Johnson v. Secretary, Dept. of H. & H. Services*, 587 F.Supp. at 1121. Other jurisdictions are in accord, where there is a finding that the delay was in bad faith. *See e.g., Caspe v. Aaacon Auto Transport, Inc.*, 658 F.2d 613, 617–18 (8th Cir.1981) (where party acted in uncooperative and dilatory fashion, including making numerous requests for continuances that prolonged proceedings, court properly assessed attorney's fees against it); *Ryan v. Hatfield*, 578 F.2d 275 (10th Cir.1978) (power to award attorney's fees recognized in equity jurisprudence where opponent acts in bad faith, vexatiously or wantonly following dismissal of action for failure to prosecute); *Kinnear–Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 637 (5th Cir.), *cert. denied*, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (where plaintiff's actions were sufficiently dilatory and vexatious to constitute bad faith and that litigation was for purpose of delay and where plaintiff had repeatedly failed to participate in litigation, defendant was entitled to attorney's fees); *Flora v. Moore*, 461 F.Supp. 1104 (N.D.Miss.1978), aff'd 631 F.2d 730 (5th Cir.1980), *reh. denied*, 636 F.2d 314 (5th Cir.1981) (meritless employment discrimination action which was pursued in bad faith or for oppressive reasons was properly subject to imposition of attorney's fees); *EEOC v. Datapoint Corp.*, 457 F.Supp. 62 (W.D.Tex.1978) (court assessed attorney's fees against EEOC as vast majority of defendant's time and expense was spent before trial in preparation of a defense to claims that were frivolous and that the EEOC ultimately abandoned).

█ Significantly, however the defendant here has not shown that plaintiff's request for a delay in order to secure new counsel was made in bad faith. Indeed, had Judge Sporkin of this Court—to whom this case was then assigned—considered the request to have been made in bad faith, he could not have permitted the delay. Thus, defendant's reliance on Rule 11 sanctions is misplaced.

█ While the Court finds sanctions under Rule 11 inappropriate, defendant need not show plaintiff acted in bad faith to recover reasonable attorney's fees under Section 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). That section provides that

> [i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k).

The Supreme Court, in *Christianburg Garment Company v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), defined the circumstances under which a prevailing defendant in a Title VII case may be allowed to recover attorney's fees, explaining that "a district court may in its discretion award attorney's fees to a prevailing defendant in Title VII case upon finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 415, 98 S.Ct. at 697. Unlike Rule 11, which expressly gives the Court flexibility to sanction *particular* pleadings or motions that it finds wantonly or vexatiously asserted, Section 706(k) is outcome based in that it provides that awards may only be made to the prevailing party. Arguably, therefore, *particular* conduct during litigation which is "frivolous, unreasonable, or without foundation" is not sanctionable under Section 706(k), unless the action itself met the criteria. The defendant here has not shown that the plaintiff's Complaint was frivolous or unreasonable. On the other hand, defendant has per-

suasively shown that plaintiff acted unreasonably in the timing of her request for new counsel. Plaintiff's request for a delay to seek new counsel was not only presented at the time the trial was scheduled to begin, but came after repeated assurances as late as four days earlier that she and her counsel were ready to proceed. Furthermore, the plaintiff offered no justification for the request once the Court had resolved her dispute with counsel in her favor. As Judge Sporkin noted in reluctantly granting plaintiff's request, at that point plaintiff had "allowed this thing to go too far." Nonetheless, while agreeing with the defendant that plaintiff's timing was egregious, the Court does not find that an award under Section 706(k) would be appropriate. Defendant has not shown that plaintiff's desire to replace her counsel, however belatedly raised, was frivolous, unreasonable, or without foundation. Furthermore, defendant has not shown, and the court does not find, that the Complaint itself was frivolous, unreasonable, or without foundation.

## V. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On December 3, 1987, defendant moved for summary judgment against plaintiff and for the dismissal with prejudice of plaintiff's Complaint. Defendant argues that not only is there no genuine issue as to any material fact, "[t]here [likewise] exist no record facts sufficient to support a reasonable inference that FNMA intentionally discriminated or retaliated against plaintiff on any basis." Hence, defendant concludes, and the Court agrees, FNMA is entitled to summary judgment.

### A. *The Standards Governing Entry of Summary Judgment*

Federal Rule of Civil Procedure 56(e) provides, *inter alia*, that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the party." Fed.R.Civ.P. 56(e). The Advisory Committee notes that the "very mission of the summary judgment procedures is to pierce the pleadings and to assess the proof to see whether there is a genuine need for trial." Fed.R.Civ.P. 56(e), Advisory Committee Note. This view is confirmed by the 1986 trilogy of Supreme Court cases dealing with the issue of summary judgment. *See generally, Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) ("there can be 'no genuine issue as to any material fact,'" where there is a complete absence of any admissible evidence to support the plaintiff's claims); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (court should not send case to the jury "merely because some evidence has been introduced by the party having the burden of proof, unless the evidence is of such a character that it would warrant a jury in finding a verdict in favor of that party"); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–89, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) ("[W]hen the moving party has carried its burden under Rule 56(e), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. [citations omitted] ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.").

In the most recent case of the Supreme Court's 1986 trilogy, the Court of Appeals had reversed the District Court, holding that the defendant asbestos manufacturer's failure to negate plaintiff's allegation that her husband had been exposed to the defendant's product made summary judgment inappropriate. The Supreme Court reversed, holding that

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2553.

As plaintiff concedes, the standards governing the entry of summary judgment apply equally to claims involving allegations of employment discrimination. *See, e.g., Harris v. District of Columbia*, 652 F.Supp. 154, 157–58 (D.D.C.1986). In this disparate treatment claim, the plaintiff has the burden of establishing "that she has been the victim of intentional discrimination," *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); that is, that she was treated less favorably than others *because of* her gender. *See Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). This Court, among others, has recently reaffirmed that, "in a Title VII case, 'proof of discriminatory motive is critical.'" *Grimes v. District of Columbia*, 630 F.Supp. 1065, 1069 (D.D.C. 1986) (emphasis in original), *quoting from International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977); *see also, Delgado v. Lehman*, 665 F.Supp. 460 (E.D.Va.1987), *citing Washington v. Davis*, 426 U.S. 229, 253–54, 96 S.Ct. 2040, 2054–55, 48 L.Ed.2d 597 (1976); *Harris v. Southern R. Co.*, 633 F.Supp. 578, 580 (W.D.N.C.1986) ("What plaintiff has overlooked is that Title VII does not provide that a person may not be discharged *if* he is black [or she is a woman], but *because* he is black [or she is a woman].").

## B. *Proof Analysis in Title VII Cases*

For the plaintiff to survive defendant's motion, she must initially establish at least a prima facie case of discrimination. *Burdine*, 450 U.S. 248, 101 S.Ct. 1089; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Essentially, a *prima facie* case requires showing that similarly situated, non-protected class employees received better treatment, or adducing other facts to raise

an inference of bias. *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817. If the plaintiff establishes such a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its challenged action. *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. Summary judgment is appropriate where either the evidence is insufficient to establish a *prima facie* case, *Pace v. Southern Ry. System*, 701 F.2d 1383, 1391 (11th Cir.), cert. denied 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); *Branch v. National Capital YMCA*, 36 Fair Empl. Prac. Cases (BNA) 230, 231–32 (D.D.C. 1984) [available on WESTLAW, 1984 WL 15662], or, assuming a *prima facie* case, there is no genuine issue of material fact that the defendant's articulated non-discriminatory reason for the challenged decision is pretextual, *Molerio v. FBI*, 749 F.2d 815, 822–23 (D.C. Cir.1984); *Farrell v. Potomac Electric Power Co.*, 616 F.Supp. 995, 998–99 (D.D.C. 1985).

In establishing a *prima facie* case, the plaintiff must show four separate elements: "(1) her membership within a protected class; (2) her discharge and/or denial of promotion; (3) her replacement with or promotion of a person outside the protected group; and (4) her ability to do the job or her qualification for the promotion." *Delgado*, 665 F.Supp. at 460, *citing McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. However, failure to adduce evidence of record sufficient to allow the factfinder to find each of these elements is not necessarily fatal. In *Delgado* for example, the Eastern District of Virginia held that "[a] prima facie case may be established through a legally mandatory, rebuttable presumption...." *Delgado*, 665 F.Supp. at 460. Specifically, the court in that case, relying on *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed. 2d 396 (1977), found that the plaintiff "met her initial burden in this case," notwithstanding her failure to show that she was replaced by a member of a nonprotected class, by showing that her supervisor "treated men and women differently." *Id.*

## C. *Plaintiff Fails To Establish a Prima Facie Case or Show Defendant's Reasons Pretextual*

■ Applying the above principles to the facts at hand, it is evident that the plaintiff has failed to meet her burden of showing sufficient, non-speculative, admissible evidence to survive defendant's motion for summary judgment. In the words of *Matsushita,* the "record taken as a whole could not lead a rational trier of fact to find" that plaintiff has established a *prima facie* case for any of her specific allegations of discrimination, or, assuming *arguendo* the establishment of such a case, that defendant's articulated reasons for its actions are merely pretextual. *Matsushita,* 475 U.S. at 586–89, 106 S.Ct. at 1356–57. There exist no record facts to show that plaintiff was treated differently from similarly situated non-minority employees, much less that FNMA intentionally discriminated or retaliated against plaintiff on any basis.

### 1) Plaintiff Was Not Discriminatorily Denied Training.

The Court finds that plaintiff was not actually denied any training. Rather, she was denied the opportunity to receive computer training before her contemporaries in order to help with the computer conversion. Plaintiff and the remaining Accounting Technicians did ultimately receive the same training as the employee selected to help with the conversion. Furthermore, plaintiff was not "similarly-situated" with the employee who was chosen, because that employee mastered the keying techniques more quickly than plaintiff and her co-workers and was newer to the Payroll Unit and hence more easily spared.

### 2) Plaintiff Was Not Discriminatorily Denied Promotions.

■ Only two of the nine promotions plaintiff claims to have applied for were timely complained of in her EEOC claim: the October 1984 promotion to the position of Project Mortgage Analyst (Level 55) and the March 1985 promotion to the position of Public Finance Analyst (Level 56). Hence, only those two are properly before this Court. *Rendon v. District of Columbia,* 42 Fair Empl.Prac. Cases (BNA) 782, 785 (D.C.C. 1986) [available on WESTLAW, 1986 WL 15446] ("The issues Plaintiff may raise in a Title VII action are limited to those within the scope of the administrative investigation which grows, or could reasonably be expected to grow, out of the administrative charge of discrimination."); *Miller v. Smith,* 584 F.Supp. 149, 154 (D.D.C. 1984) ("The rationale for the rule that the scope of a Title VII Plaintiff's claim is limited to those issues raised in the EEOC charge charge is obvious given the purpose of the exhaustion requirement."), *citing Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970). The other promotion opportunities plaintiff now alleges was denied would have been untimely even if made part of her EEOC charge, because they occurred more than 300 days prior to the making of that charge. Title VII § 706(d); 42 U.S.C. § 2000e–5(e). Plaintiff is unable to show that she was similarly-situated with the persons selected, because she was not as qualified as they were. Moreover, plaintiff concedes she has no basis for believing that the denial of any of the promotions was based upon her race, sex, or national origin. She can point only to the fact that those selected were in some instances of a different race, gender, or national origin. As this Court held in *Grimes,* "proof of a discriminatory motive is critical," *Grimes,* 630 F.Supp. at 1069, and plaintiff here fails to point to any evidence which could lead one to reasonably infer that there was such a motive.

### (a) Project Mortgage Analyst.

A total of six FNMA employees applied for the position of Project Mortgage Analyst in October 1984. At least five of those employees, including the plaintiff, were interviewed by the caucasian male hiring official. The employee selected for the promotion, a caucasian male, was then working in the Loan Liquidation Department, handling mortgage loan foreclosures and other functions similar to those required of the Project Mortgage Analyst. The hiring official indicated that he had not selected

the plaintiff, because she had no educational background or prior work experience with multifamily mortgage practices. Plaintiff herself concedes that she did not have the background, qualifications, or experience to deal with Housing and Urban Development (HUD) or "Grannie Mae" (GNMA), and indeed, had difficulty even defining those terms in her deposition. She does not question the academic qualifications of the selected employee, but rather; notes that she had been working at FNMA longer than he had, a factor expressly *not* taken into consideration in FNMA promotion decisions.

### (b) Public Finance Analyst.

Five FNMA employees applied for the position Finance Analyst in March 1985. The hiring officials, a black male and a caucasian male, did not interview plaintiff, because they felt her application showed her to have "insufficient experience." Plaintiff stipulates that the hiring officials did not know her race or national origin at the time they made their decision. They selected the incumbent, a caucasian female, temporary employee, already performing the same functions. Plaintiff conceded that she had no relevant educational or practical experience in the area of financial market analysis, and demonstrated little understanding of the term financial market analysis. Again, plaintiff stated that she "was not criticizing her education … I based my conclusion on the date she was hired by the company … she had less experience with the company."

### 3) Plaintiff Did Not Receive A False Performance Evaluation.

Plaintiff complains that her performance evaluation was based on two months' supervision by a white superior and lower than what she would have been given by the black superior who supervised her for the preceding ten months. Even if true, plaintiff's argument begs the question. It is undisputed that both of the superiors, as well as the next higher level of management, had an input into the evaluation, and all of them noticed a decline in plaintiff's performance. Further, plaintiff has ad-

duced no evidence tending to dispute the defendant's reasons for the evaluation, to wit, her errors and failure to follow overtime procedures. As defendant correctly notes, it is not for this Court to review the soundness of the challenged performance evaluation, *see, Belfiore v. MSPB*, 43 Fair Empl.Prac. Cases (BNA) 668, 674 (D.D.C. 1987), [available on WESTLAW, 1987 WL 8721], beyond ascertaining whether it was based on a discriminatory motive.

Plaintiff's counsel, during the motions hearing held September 14, 1988, introduced three documents in an attempt to refute defendant's reasons for plaintiff's poor performance evaluation. However, even considering the documents in the light most favorable to the plaintiff, they fall short of either establishing a *prima facie* case or tending to show that defendant's articulated nondiscriminatory reasons for the performance appraisal were pretextual. Plaintiff's Exhibit U, a chart purportedly showing examples of times that plaintiff's fellow Accounting Technicians performed unsupervised overtime work, in violation of FNMA regulations, fails to rebut the undisputed fact that plaintiff herself refused to follow FNMA regulations in requesting overtime in advance, and often performed unsupervised overtime, also in violation of the regulations. Also, the chart makes no mention of whether the plaintiff's fellow Accounting Technicians asked permission in advance to work overtime. Finally, the chart does not necessarily show *any* violation of FNMA overtime regulations, because it lists only three supervisors. As defendant's counsel explained, without rebuttal by plaintiff, the FNMA rule for supervision is simply that there must be *some* supervisor on the same floor as the employee working overtime. The next two exhibits are similarly unhelpful in establishing plaintiff's *prima facie* case. Exhibit V, another chart prepared by plaintiff's counsel, purports to show time when plaintiff's overtime was erroneously disallowed, because a supervisor was present. However, the chart fails to demonstrate that the supervisory overtime hours coincided with those of plaintiff. In other words, plaintiff has not established that any of the supervi-

sors were actually present during the hours plaintiff worked overtime. Nor does the chart show that plaintiff ever requested permission to work overtime. In fact, it is undisputed that plaintiff herself said she did not need to seek permission to work overtime, despite being told in a group meeting that she did. Lastly, plaintiff's Exhibit W, a copy of the performance appraisal in issue, was introduced to show that plaintiff's supervisor recognized plaintiff's need for overtime, and hence, implicitly granted approval for it. In fact, the appraisal notes that despite being relieved of part of her workload plaintiff's overtime had not been reduced, and that plaintiff needed "to accept help from others to reduce her own workload."

4) Plaintiff's Involuntary Lateral Transfer Was Not Discriminatory.

■ Plaintiff fails to show that other, similarly-situated nonminority employees were treated any differently. She was making proportionately more errors and taking more time than her coworkers. Plaintiff does not dispute that her performance was declining, and was no longer considered satisfactory by her superiors. Thus, even assuming *arguendo* that plaintiff could make a *prima facie* showing, she cannot show that FNMA's valid, nondiscriminatory reason for its decision is pretextual. See *Valentino v. United States Postal Service*, 674 F.2d 56, 63 (D.C. Cir. 1982). That is, plaintiff has shown no evidence that her superiors moved her for any reason other than the legitimate and facially reasonable decision they gave her at the time: because they were concerned that she was suffering from job fatigue and burnout.

5) Plaintiff's Termination Was Not Retaliatory As A Matter of Law or Fact.

■ Plaintiff concedes that insubordination is grounds for termination, but relies on the assertion that she had a right to refuse to obey what she perceived as a discriminatory order. Even if plaintiff could show that her refusal to perform the new assignment was based on her good faith belief that the order was discriminato-

ry, she still could not prevail. By refusing to perform her assigned work, work that did not "present[ ] such an aggravated situation that a reasonable employee would be forced to resign," *Clark v. Marsh*, 665 F.2d 1168, 1173 (D.C. Cir.1981), *quoting Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 66 (5th Cir.1980), the plaintiff essentially removed herself from the protection of Title VII. *See e.g., Smith v. Texas Dept. of Water Resources*, 818 F.2d 363, 365–66 (5th Cir.1987) (employer properly discharged engineering aide for refusing allegedly discriminatory assignment of secretarial relief work) *and cases cited therein; Baranek v. Kelley*, 44 Fair Empl.Prac. Cases (BNA) 1400, 1404 (D.Mass.1987) [available on WESTLAW, 1987 WL 17546] (employer properly discharged EEO representative for insubordination in conducting minority group meeting without required presence of manager and in refusing to inform manager of content of the meeting). As the Fifth Circuit explained in *Smith v. Texas Dept. of Water Resources*, "an employee is not immune from discharge merely by claiming that she was opposing discriminatory practices, and ... an employer remains entitled to loyalty and cooperativeness from employees." *Smith*, 818 F.2d at 366 [citations omitted]. In addition to failing to show that the termination was retaliatory as a matter of law, the plaintiff has pointed to nothing that would support a reasonable inference of retaliation in fact. She concedes that she has no basis for believing there was a causal connection between her grievance and her termination, other than the fact the termination happened subsequent to the grievance. That is simply not enough.

## VI.

Thus, having carefully considered defendant's motions for costs and attorney's fees, and for summary judgment, plaintiff's responses, oral argument for both sides, and the entire record of this case, and finding no genuine issue of material fact in dispute, the Court will (1) deny defendant's motion for costs and attorney's fees incurred in preparing for the Novem-

ber 9, 1987 trial of this matter, and (2) grant defendant's motion for summary judgment.

SO ORDERED.

## ORDER

It is the judgment of the Court that the plaintiff take nothing and that judgment is hereby entered on behalf of defendant dismissing this case with prejudice for the reasons stated in the Court's memorandum opinion issued this date.

SO ORDERED.