Harvey ROSS, Plaintiff,

v.

Marvin RUNYON, Postmaster General, U.S. Postal Service, Defendant.

Civ. A. No. 92–2332.

United States District Court, District of Columbia.

July 27, 1994.

Donald Thomas Bucklin, Rawle Andrews, Jr., Ann M. Beimdiek, Squire, Sanders & Dempsey, Washington, DC, for plaintiff.

Claire M. Whitaker, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

Before the Court is Plaintiff's Motion for Summary Judgment and Defendant's Motion for Remand or for Summary Judgment. Based on motions filed by the parties and responses thereto, as well as oral argument, Defendant's Motion for Summary Judgment will be granted, and both Defendant's Motion for Remand and Plaintiff's Motion for Summary Judgment will be denied.

### 1. *General Background*

In this action, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as the Civil Rights Act of 1991 (the "1991 Act"), as codified at 42 U.S.C. § 1981a, Plaintiff Harvey Ross alleges that the United States Postal Service ("Postal Service") discriminated against him on the basis of his race (African–American) when it failed to promote him to the position of Mail Equipment Shops technician in October 1989.

Plaintiff joined the Postal Service in 1987 as a general mechanic (grade 5) after working for 11 years at a variety of non-governmental jobs installing, repairing, and maintaining electrical and electronic systems. He received his initial training at the U.S. Navy Electrical and Electronic School, and benefitted from several related, specialized courses subsequent to his initial training.

On August 25, 1989, the Mail Equipment Shops ("MES"), a section of the Postal Service, posted Vacancy Announcement No. 2077 for the Bargaining Unit position of MES technician, level C–09. The MES is charged with making mail bags, pouches, locks and keys for the Postal Service, and the MES technician is responsible for repairing and maintaining the heavy equipment to keep the operations functioning.

Plaintiff Ross and six other people submitted applications for the MES technician position. To qualify for an interview for the position, each applicant was required to achieve a passing score on the mandatory Postal Test 500 ("PT 500"). Six of the seven applicants passed the PT 500 and qualified for an interview. Plaintiff achieved the highest score on the exam. Of the six applicants, four were African–American, one was Caucasian, and one was Asian–American.

The six qualified applicants, including Plaintiff Ross, were then scheduled for individual interviews with the selecting panel, which consisted of three members: (1) Robert Black, the selecting official, who was responsible at the time for the general administration of the MES operations (African–American); (2) Audrey Simmons, a production/planning specialist who was the primary user of the heavy equipment that the MES technician would have to maintain (African–American); and (3) Terry Cox, the General Supervisor of Maintenance, who was in charge of the technical operations of the plant (Caucasian). The panel interviewed the applicants individually, and rated them on the qualification standards for the position set forth in Qualification Standard 6753a to the Postal Service EL–303 Handbook.

The selecting panel interviewed Plaintiff on October 13, 1989. By his own admission, Plaintiff was ill on the day of his interview and nervous. The panel also reviewed Plaintiff's application form, as well as the Supervisory Appraisal form completed by Plaintiff's immediate and second line supervisors: Reginald Carnegie and Steve Cohout. Plaintiff was only recommended "with reservation" by both men, and his supervisor, Reginald Carnegie, noted on the appraisal form that Plaintiff had only "fair human relations and poor attendance."

At the end of the interview process, the composite scores of each of the six applicants were as follows:

| Applicant | Score | Race |
| --- | --- | --- |
| Arthur Taylor | 179 | Caucasian/American |
| George White | 164 | African/American |
| Kevin Perkins | 152 | African/American |
| You Yang | 150 | Asian/American |
| Harvey Ross | 149 | African/American |
| Thomas Atkins | 135 | African/American |

Because he had obtained the highest total score, Arthur Taylor was selected for the position of MES Technician. Plaintiff Ross, who was ranked fifth overall, was notified on October 23, 1989 that he had not been selected.

Asserting that discriminatory animus had severely tainted the selection process, Mr. Ross filed a formal complaint of discrimination with the Equal Employment Opportunity ("EEO") Office of the Post Office, Southern Maryland Division. *Harvey Ross v. Anthony Frank, Postmaster General, USPS*, USPS No. 2–C–1104–90. After exhausting his remedies at the administrative level, Mr. Ross filed a complaint of discrimination with this Court.

2. *Defendant's Motion for Remand*

■ According to the Postal Service, Mr. Ross' claim is not fit for judicial resolution and should be remanded to the Equal Employment Opportunity Commission ("EEOC"). A review of the administrative process in this case is necessary to understand the basis for this claim.

The record indicates that Ross originally sought to file an EEO complaint based on racial discrimination. However, an EEO counsellor at the Southern Maryland Postal facility erroneously advised Ross that he could not file a race-based EEO complaint. Instead, the EEO counsellor recommended that Ross file an EEO complaint alleging discrimination based on his national origin— Afro/American Jamaican. Accordingly, on December 27, 1989, Plaintiff filed a formal complaint of national origin discrimination with the EEO Office of the Post Office, Southern Maryland Division. *Harvey Ross v. Anthony Frank, Postmaster General, USPS*, USPS No. 2–C–1104–90. After the agency issued a Proposed Disposition finding no discrimination, Plaintiff Ross requested an administrative hearing before the Equal Employment Opportunity Commission ("EEOC"). *Ross v. Frank*, EEOC Case No. 120–90–8959X. Prior to the hearing, Ross was advised that the correct basis of his complaint was most likely racial discrimination. Thereafter, Ross formally amended his

complaint to state a claim of racial discrimination. On March 20, 1991, Administrative Judge Burgess, before whom Plaintiff's administrative complaint was argued, issued a Recommended Decision finding no racial discrimination. The Postal Service adopted the Recommended Decision in its final Agency Decision on June 4, 1991. On June 19, 1991, Plaintiff appealed to the Federal Operations Office of the EEOC, *Ross v. Frank,* EEOC Appeal No. 01912931, which found no discrimination "based on national origin." As a final step to obtain an administrative remedy, Plaintiff filed a petition for reconsideration with the EEOC, which was denied on April 9, 1992.

According to Defendant, the case must now be remanded to the EEOC because the Postal Service determination addressed racial discrimination while the EEOC's determination addressed national origin discrimination. This Court disagrees. The issue of racial discrimination was properly before the EEOC, and after carefully reviewing the entire record, the EEOC made a final determination in the case, and denied a petition for reconsideration. Nothing in the record suggests that the EEOC did not review the entire record before it and every allegation raised. The EEOC's determination was complete and final. Thus, nothing in the record suggests that this case is not fit for judicial review.

### 3. *Parties' Cross–Motions for Summary Judgment*

#### A. *Summary Judgment Standards*

Under Federal Rule of Civil Procedure 56, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment. The adverse party's opposition must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e).

The governing standards for the issuance of summary judgment were set by the Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex,* the Court explicitly recognized that a full-blown trial is a drain on resources to be avoided if and when the non-moving party's position cannot be substantiated through affidavit or other competent means:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1. . . . .
>
> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555 (citation omitted).

 The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir. 1987) *(per curiam )* (citing *Celotex, supra ).* For this case to go to trial, Mr. Ross must provide evidence of his *prima facie* case which would be admissible at trial. If the Postal Service provides evidence that Ross did not receive the promotion because, among other things, he did not score as well as other applicants during the interview process and he had a history of attendance problems at work, Ross must then bring forward evidence of the pretextual nature of the legitimate non-discriminatory reason posited by defendant Postal Service. Evidence that is "merely colorable" or "not significantly probative" cannot prevent the issuance of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

B. *Evidence Put Forward by Plaintiff Ross*

■ In a Title VII complaint, a *prima facie* case is established when the plaintiff demonstrates that (1) he is a member of a protected class, (2) he was qualified for the position, and (3) a member of a non-protected class was selected. If the plaintiff succeeds in demonstrating these things, the burden shifts to the defendant to provide evidence of a legitimate non-discriminatory reason for the non-selection. Once the defendant has substantiated the legitimate non-discriminatory reason, the burden shifts back to the plaintiff to provide evidence that the legitimate non-discriminatory reason for the employment decision was merely a pretext—a mask—for the illegal race-based discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Mr. Ross claims that he was not selected to fill the position of MES Technician because of his race. His allegations can be encapsulated in the three following statements:

1. Plaintiff, Harvey Ross, was an excellent employee whose training and experience made him more qualified than the selectee, Arthur Taylor, for the MES technician position.

2. The procedures used during the selection process were in violation of postal regulations.

3. Mr. Ross was unfairly rated on areas not within the scope of the vacancy announcement, including his past leave record and his experience, or lack thereof, regarding heating, air-conditioning and ventilation.

The complaint, documents, affidavits, and depositions provided by Mr. Ross either do not support these allegations or are immaterial to the issues presented. The Court will outline the evidence before it on each of these points:

1. *The Qualifications of Ross and Taylor*

■ It would be improper for this Court to substitute its judgment for that of a Selecting Official in a government agency. However, in the context of cross-motions for summary judgment, this Court will review the record to determine if the qualifications of the Caucasian/American selectee are so inferior to those of the African/American plaintiff as to suggest evidence of discrimination that is more than "merely colorable."

It is undisputed that Mr. Ross was well-educated and had extensive experience in electrical and electronic systems. Mr. Ross joined the Postal Service in 1987 as a general mechanic (grade 5) after working for 11 years at a variety of jobs installing, repairing, and maintaining electrical and electronic systems. It is also undisputed that Mr. Ross' attendance at the Postal Service had been a problem. During his interview with the Review Committee, Ross indicated that he had an attendance problem less than a year before. Indeed, between December 1988 and April 1989, Plaintiff's attendance was so unsatisfactory that he was issued a Letter of Warning which did not expire until after he was interviewed to fill the position of MES technician.

It is also undisputed that Mr. Ross' immediate and second-line supervisors, Reginald Carnegie and Steve Cohout, recommended Ross only "with reservation."[1] According to Carnegie:

> I recommended [Ross] for the position "with reservation" because, although he was a good mechanic and conscientious in doing his assignments when he put his mind to it, he was hard to deal with and indifferent to his job.

*See* Carnegie Dep. at 3, Def. Ex. H to Motion for Summary Judgment. Plaintiff does not dispute that he was indifferent to his job. In his deposition, he stated that he was "bored," felt he was "babysitting" a piece of equipment, and the job was "non-challenging." Ross Dep., Vol. 4 at 17. Last, Ross does not dispute that he was sick and nervous on the day of his all-important interview.

1. While Mr. Carnegie amended his evaluation of the applicant subsequent to the selection process at issue, he retained the qualification "with reservation."

Like Harvey Ross, Arthur Taylor, the selectee, also joined the Postal Service in 1987. Unlike Ross, Taylor was hired as a MPE mechanic, which is a grade higher than the general mechanic job obtained by Ross. Prior to joining the Postal Service, Taylor spent 17 months studying electronics at the Arundel Institute of Technology. Before his electronics studies, Taylor spent four years working as an equipment operator.

Unlike Plaintiff, Taylor received a glowing, unqualified recommendation from both his immediate and second-line supervisors. On the recommendation form, Lester Bailey, his immediate supervisor, wrote that he was so impressed by Taylor that he made Taylor "acting supervisor and lead mechanic." *See* Taylor Application at 4, Pl.Ex. 15 to Motion for Summary Judgment. Robert Stroud, Taylor's second-line supervisor, also praised Taylor on the recommendation form, stating "without any reservations that this employee has the knowledge, skills and abilities to *more than* match the qualification standards for this position." *Id.* Further, he noted that "[o]n numerous occasions [Taylor] was instrumental in improving the operating conditions of mail processing equipment and was the key person on several projects involving installations of various computer system (sic) and extremely intricate modifications." According to Stroud, one of Taylor's "major attributes is a keen ability to isolate faults and make repairs without any assistance." *Id.*

Mr. Taylor scored well on the qualifying test, PT 500, scoring only 1.8 points less than Ross, and the record demonstrates that Taylor impressed the selecting committee with his answers to their technical questions. In sum, there is no evidence in the record that suggests Taylor was anything less than qualified for the position of MES technician. The only evidence proffered by Ross that he was more qualified than Taylor is that he had spent more years working in related fields and he scored 1.8 points higher than Arthur on the qualifying exam. He offers no evidence that these two attributes made him more qualified than Taylor for the specific position of MES technician. Ross fails to take into account that Taylor held a higher-grade job with more responsibilities than Ross, that Taylor received more favorable recommendations than Ross, and that by all accounts Taylor impressed the selecting officials during the interview more than Ross.

That the selecting committee ranked someone with Taylor's qualifications higher than they ranked Ross does not suggest any discriminatory animus. The Court notes that of 55 promotions to Bargaining Unit positions at the MES since 1987, 50 have been to African/Americans. *See* Bryant Declaration at 1, Def.Ex. A to Opposition to Motion for Summary Judgment.

### 2. The Procedures of the Selection Process

■ Ross contends that several of the procedures used during the selection process violated postal regulations, including:

a. the use of a three-member Review Committee, as opposed to a sole Selecting Official decision-maker;

b. the inclusion of the supervisor of the MES technician position, as well as the supervisor's superior, as members of the Review Committee;

c. the failure to have Review Committee members with more technical expertise than Audrey Simmons and Robert Black;

d. the decision to rate the applicants on only 14 of the 20 qualifications listed on Qualification Standard 6753a; and

e. the failure of the Review Committee to verify the information in the applications and recommendations before making the selection.

Even if all of these procedures violate postal regulations, which this Court need not address, Plaintiff proffers no evidence that such procedures either stemmed from or resulted in discriminatory treatment. While improper or irregular procedures can be evidence of discriminatory animus, nothing in the record suggests that such is the case here. For example, there is no evidence in the record that the appointment of a three-member Review Committee, especially one with two African/American members, benefitted the other applicants and harmed the

Plaintiff in some way that would not have happened if a sole Selecting Official had made the decision. Similarly, nothing in the record supports the notion that the other applicants benefitted and Plaintiff was injured by the failure of the Review Committee to review the personnel records in order to verify the applications and recommendations. To the contrary, Plaintiff can only have benefitted from the fact that the Review Committee did not see his file and learn that he was subject to an official Letter of Warning due to his attendance record.

The only link Ross suggests between the alleged procedural improprieties and the alleged discrimination relates to the technical expertise of Simmons and Black. According to Ross, postal procedures for Review Committees provide that for "highly technical position[s]", a minimum of two committee members with a high degree of technical expertise in the field must be designated. Again according to Ross, only one Review Committee member, Terry Cox, had the requisite technical knowledge. The record indicates that prior to the interviews, Cox met with Simmons and Black and provided them with questions and model answers to assist them in their analysis of the candidates. Ross contends that the lack of technical expertise of Simmons and Black resulted in inaccurate ratings of the technical prowess of Ross compared to the other applicants. Again, even if Ross is correct in his evaluations of the technical expertise of the Committee members, the record is bereft of any link between such lack of technical expertise and racial discrimination in the selecting process.

In sum, the specific allegations of procedural improprieties and/or irregularities do not support Ross' claim of racial discrimination, and are irrelevant to his claim.

### 3. The Propriety of Certain Ratings

■ Ross contends that he was unfairly rated on areas not within the scope of the vacancy announcement, including his experience in heating ventilation and air-conditioning (HVAC), as well as his past attendance record. Again, Ross fails to demonstrate any link between the alleged unfair ratings

and discriminatory treatment. Ross and Taylor, the selectee, were rated quite similarly on their HVAC experience, so there is no evidence that the Committee's reliance on this criterion resulted in any disparate treatment.

Ross' complaint concerning his dependability rating is also unwarranted. The record indicates that the Review Committee valued dependability highly because the MES had only one technician to keep the equipment in working order. Ross told the Committee that he had an attendance problem less than a year before his interview. On his evaluation, Ross' supervisor also indicated that Ross had an attendance problem. That the Committee did not rate Ross' dependability highly after such testimony is hardly evidence of discrimination. Ross argues that since his supervisor later removed the line regarding Ross' attendance problems from the evaluation, such is evidence that Ross did not have a dependability problem and should not have been given a low rating. The Court disagrees. The fact that the line was removed after the selection process does not suggest that Ross was *discriminated* against because the Committee relied on the statement during the selection process. Moreover, the fact that it was removed certainly did not prove problem-free attendance. At the time of his interview, Ross was under a Letter of Warning as a result of his attendance problems. Thus, Ross is in no position to argue that his dependability rating was improper, let alone evidence of discrimination.

Finally, the Court notes that even if ratings on HVAC and attendance were removed from each Committee member's tally sheet, Taylor still garnered the highest points. *See* Bryant Aff. at 6, Def.Ex. B to Motion for Summary Judgment.

### 4. Conclusion

■ In discrimination cases, summary judgment must be approached with special caution. *See McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370–71 (7th Cir.1992) ("general standard [for summary judgment] is applied with added rigor in employment discrimination cases"). This

Court recognizes that discriminatory intent and proof of disparate treatment are notoriously difficult to establish, so the court must be extra-careful to view all evidence in the light most favorable to Mr. Ross. This said, Plaintiff has brought forward no evidence of race discrimination despite months of discovery. He cannot point to any statement by any employee of the Postal Service suggesting discriminatory intent in the selection process. The evidence of disparate treatment is equally scarce. A thorough examination of the affidavits, depositions, and documentary evidence makes it clear that Mr. Taylor was selected for a job for which he was qualified, and Mr. Ross was not selected for the job for legitimate, non-discriminatory reasons.

Mr. Ross does not dispute that Mr. Taylor passed the qualifying exam, received strong recommendations from his supervisors, and impressed the Review Committee with his answers during the interview process. Similarly, Mr. Ross does not dispute that the recommendations from his supervisors that were submitted to the Review Committee were only limited recommendations, that his attendance in the year before the interview had been a problem, and that he had been sick on the day of the all-important interview. In spite of this, Mr. Ross maintains that his non-selection for the job of MES technician and the selection of Mr. Taylor were somehow related to race.

A review of the record and all inferences drawn from it make it clear that Mr. Ross has put forward no evidence from which a reasonable juror could find that the Postal Service's legitimate non-discriminatory reasons for Ross' non-selection were a pretext for racial discrimination.