**Vincent DEVERA, Jr., Plaintiff,**

v.

**Robert McCormick ADAMS, Secretary of the Smithsonian Institution, Defendant.**

**Civ. A. No. 92–1395 PLF.**

United States District Court, District of Columbia.

Jan. 25, 1995.

Francine K. Weiss, Kalijarvi & Chuzi, P.C., Washington, DC, for plaintiff.

Barbara J. Valliere, Asst. U.S. Atty., Washington, DC, for defendant.

## OPINION

FRIEDMAN, District Judge.

Plaintiff is an Asian/Pacific Islander, his color is brown and his national origin is Filipino. He is, and at all times relevant to this case was, employed at the Smithsonian Institution in the Office of Protection Services. Since commencing employment at the Smithsonian in 1975, plaintiff has risen from a GS-3 Guard position to a GS-8 Guard Supervisor position. In November 1987 plaintiff applied for and was denied a pro-

motion to one of three vacant GS-9 Executive Officer (Lieutenant) positions at the Smithsonian Institution. Plaintiff was among 16 applicants for the three positions. The group of 16 was narrowed to a group of six applicants, including plaintiff, who would be eligible for the position at a GS-9 level and were invited for interviews. Plaintiff was not chosen for any of the three vacancies. All three selectees were African-American, non-Filipino men.

Defendant claims that plaintiff was not selected because he had not participated in the Modern Management and Training Course, or its equivalent, had not served as a temporary executive officer, or in an equivalent position, and did not exhibit the level of flexibility that the selection committee determined was necessary in an executive officer. Burford Dep. at 70–71, 79–83. On March 7, 1988, plaintiff filed a formal charge with the Smithsonian alleging discriminatory failure to promote.

Shortly before November 1988, the Office of Protective Services, through Deputy Chief Ronald Colaprete, issued a directive that all name tags be removed from the outside surfaces of new lockers. Plaintiff used one of the new lockers. Plaintiff's immediate supervisor, Captain Harold W. Hancock, removed a name tag from plaintiff's locker on two occasions prior to November 1988 and verbally instructed plaintiff not to place a name tag on his locker. Hancock Dep., Ex. K; Pl.Opp., Ex. 21. On November 1, 1988, Captain Hancock issued a written memorandum to all the members of plaintiff's guard company, instructing them that name tags should not be placed on lockers and warning them that officers who disobeyed the no-tag policy would be subject to disciplinary action. Hancock Dep. at 33 and Ex. J. Captain Hancock specifically noted that he had twice removed nametags from one particular locker and copied the memorandum to plaintiff. *Id.* After Captain Hancock observed that plaintiff still refused to comply with Deputy Chief Colaprete's directive, Captain Hancock issued a letter of insubordination, dated November 10, 1988, reiterating plaintiff's obligation to follow orders and cautioning him that more severe discipline could result if

plaintiff continued to tag his locker. Hancock Dep., Ex. K. On March 2, 1989, after plaintiff continued to refuse to remove his name tag from his locker, Captain Hancock issued an official reprimand. Pl.Opp., Ex. 21.

In June 1989, Lieutenant Steptoe Wrenn retired from an Executive Officer position in plaintiff's guard company. Plaintiff alleges that he had two conversations with Captain Hancock regarding the vacancy, but concedes that he did not apply for the position on either a temporary or a permanent basis and did not contact anyone at the Office of Protection Services headquarters regarding the vacancy. Devera Dep. at 144–49. In September 1989, the vacancy was filled with a permanent executive officer.

Plaintiff alleges that defendant engaged in race, national origin and color discrimination by failing to promote him to a GS–9 Executive Officer position in 1987, retaliated against him for filing an employment discrimination charge by disciplining him for placing a name tag on his locker in 1988, and denied him promotional opportunities by failing to offer him a temporary Executive Officer position in 1989. After the completion of discovery, defendant filed a motion seeking summary judgment on all of plaintiff's claims. Plaintiff opposed summary judgment. The Court heard oral argument on December 21, 1994. For the reasons stated by the Court from the Bench, the Court denied summary judgment on plaintiff's failure to promote claim and scheduled the case for trial on April 3, 1995. The Court announced its decision from the Bench to grant summary judgment for defendant on plaintiff's retaliation and denial of promotional opportunities claims. The reasons for that decision are set forth in this Memorandum Opinion.

## A. SUMMARY JUDGMENT STANDARD

Under Rule 56, Fed.R.Civ.P., summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513; *see also Washington Post Co. v. U.S. Dept. of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir.1989). But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

"[A] Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (citation omitted); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Once the plaintiff has made out a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory explanation for its conduct. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802–05, 93 S.Ct. at 1824–25. The burden then shifts back to the plaintiff to produce some evidence, either direct or circumstantial, that the articulated reason for the defendant's conduct is mere pretext. *Id.; Skelton v. ACTION,* 668 F.Supp. 25, 29 (D.D.C.1987). Summary

judgment "is appropriate where either the evidence is insufficient to establish a *prima facie* case, . . . or, assuming a *prima facie* case, there is no genuine issue of material fact that the defendant's articulated non-discriminatory reason for the challenged decision is pretextual." *Paul v. Fed. Nat'l Mortgage Ass'n,* 697 F.Supp. 547, 553 (D.D.C. 1988); *see Ramsey v. Derwinski,* 787 F.Supp. 8, 11–12 (D.D.C.1992); *Skelton v. ACTION,* 668 F.Supp. at 29–30.

In discrimination cases, summary judgment must be approached with special caution, and the Court "must be extra-careful to view all the evidence in the light most favorable" to plaintiff. *Ross v. Runyon,* 859 F.Supp. 15, 21–22 (D.D.C.1994). Nevertheless, a plaintiff is not relieved in a discrimination case of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial. If defendant provides evidence that plaintiff was disciplined because of legitimate non-discriminatory reasons, as it has here, plaintiff "must then bring forward evidence of the pretextual nature of the legitimate non-discriminatory purpose posited by defendant. . . . Evidence of discrimination that is 'merely colorable', or 'not significantly probative' cannot prevent the issuance of summary judgment." *Johnson v. Digital Equipment Corp.,* 836 F.Supp. 14, 15 (D.D.C. 1993) (citation omitted).

## B. RETALIATION

A prima facie case alleging retaliation under Title VII is established when the plaintiff demonstrates that (1) he engaged in protected behavior, (2) he was subject to an adverse action by his employer, and (3) there is a causal link between the adverse action and the protected activity. *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985); *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984). The causal connection may be demonstrated by circumstantial evidence that leads to an inference of retaliatory motive.

Plaintiff has established that he engaged in protected conduct by filing a formal discrimination charge alleging discriminatory failure to promote in March 1988. He has also established that he was disciplined by a letter of insubordination issued on November 10, 1988, and by an official reprimand on March 2, 1989. Plaintiff argues that he has established a causal link between his protected conduct and the disciplinary measures because the discipline took place subsequent to his having filed his discrimination claim.

Protected conduct followed by adverse action can sometimes justify an inference of retaliatory motive, particularly if the length of time between the two occurrences is short. *Mitchell v. Baldrige,* 759 F.2d at 86. In this case, eight months transpired between the time plaintiff filed his discrimination charge and the date on which he was disciplined. While an eight month interval between the two events is not strongly suggestive of a causal link, it may sometimes, and depending on other circumstances in the particular case, be sufficient to meet plaintiff's burden of establishing a prima facie case of retaliation. The Court finds, however, that even if plaintiff has met his initial burden under the *McDonnell Douglas* burden allocation formulation, he has not produced any evidence, direct or circumstantial, to demonstrate that there is a genuine issue of material fact regarding whether defendant's articulated non-discriminatory reason for disciplining plaintiff is pretextual. *See Paul v. Federal National Mortgage Ass'n,* 697 F.Supp. at 556.

Defendant asserts that plaintiff was disciplined for marking his locker and not for any discriminatory or retaliatory reason, and that all similarly situated employees were advised of the policy against marking their lockers and the disciplinary action that would follow if they violated the policy. Plaintiff's own deposition demonstrates (1) that plaintiff was aware of Deputy Chief Colaprete's directive against marking lockers, Devera Dep. at 109–10; (2) that, despite oral instructions from his direct supervisor, plaintiff disobeyed the directive, *id.* at 110–11; (3) that plaintiff read Captain Hancock's November 1, 1988, memorandum to all members of plaintiff's guard company directing employees to comply with Deputy Chief Colaprete's directive not to mark their lockers and threatening

disciplinary measures against those who disobeyed the directive, *id.* at 111; and (4) that, despite written and verbal instructions to the contrary, plaintiff continued to mark his locker. *Id.* at 113.

Plaintiff argues that defendant's explanation is pretext for two reasons: (1) plaintiff contends that the Deputy Chief's directive contradicted written regulations requiring the marking of lockers, and (2) other officers were not disciplined for failing to comply with Deputy Chief Colaprete's directive. Devera Dep. 109–13, 124. According to plaintiff, written regulations issued by the Chief of the Office of Protection Services, which require "[s]ecurity officers [to] mark their wall lockers with their ASNs [assigned security numbers]," conflict with Deputy Chief Colaprete's directive and Captain Hancock's verbal and written instructions not to place tags on new lockers. Because the Chief of the Office of Protection Services is Deputy Chief Colaprete and Captain Hancock's superior, plaintiff argues that the no-tag directive is invalid. Defendant responds that the two directives are not inconsistent because the regulations requiring lockers to be marked with ASNs do not specify where or how to mark the locker. The Court need not determine whether the regulations can be harmonized because, despite plaintiff's disagreement about the binding authority of the no-tag rule, compliance with the rule did not impose any special hardship on plaintiff or any other employee. Plaintiff was warned of the possibility of disciplinary action and repeatedly failed to follow orders from his supervisors. An employer is entitled to expect cooperation from its employees in such circumstances, and the imposition of discipline on these facts was reasonable. *See Paul v. Fed. Nat'l Mortgage Ass'n,* 697 F.Supp. at 556.

Plaintiff's unsupported assertion that officers in other guard companies were not disciplined for disobeying the no-tag directive does not raise a genuine issue of material fact. Plaintiff's deposition testimony recites "examples" of officers in other companies who were not disciplined for disobeying the no-tag rule, but plaintiff does not claim to have any personal knowledge of such disparate treatment. "[P]laintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment[,] . . . as long as plaintiff has had a full opportunity to conduct discovery." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 257, 106 S.Ct. at 2514; *cf. Londrigan v. FBI,* 670 F.2d 1164, 1174–75 (D.C.Cir.1981). Here, after full discovery plaintiff has not offered any factual support through deposition testimony or affidavits from other officers to substantiate his claim of retaliation.

Plaintiff has failed to produce any competent evidence that the reasons he was subjected to discipline are merely pretextual or that the defendant was in fact animated by discriminatory motive. The Court therefore finds that defendant is entitled to summary judgment on plaintiff's retaliation claim.

## C. FAILURE TO OFFER TEMPORARY EXECUTIVE OFFICER POSITION

■ In order to prove a prima facie case of disparate treatment related to the Smithsonian's failure to offer plaintiff a temporary executive officer position during the summer of 1989, plaintiff must demonstrate that (1) he is a member of a protected class, (2) he applied and was qualified for a job for which his employer was seeking applicants, (3) he was rejected for the position, and (4) the position was offered to a non-member of the protected class or, after plaintiff was rejected, the position remained open and the employer continued to seek applicants with plaintiff's qualifications. *Kinsey v. First Regional Securities, Inc.,* 557 F.2d 830, 836 (D.C.Cir.1977).

■ Defendant does not dispute that plaintiff is a member of a protected class; plaintiff is an Asian/Pacific Islander, his color is brown and his national origin is Filipino. Defendant argues, however, that plaintiff cannot establish any of the other required elements of a prima facie case. Plaintiff asserts that he mentioned the Executive Officer opening to his supervisor, but concedes that he never applied for the position. Plaintiff did write a letter to the Secretary of the Smithsonian in which he noted that Lieutenant Wrenn had retired and asked "[a]m I going to receive the same opportunities given

to my felow [sic] Negro/Black Americans and my fellow Caucasian/White Americans?" Pl. Opp., Ex. 27. The Court finds that this inquiry was not an application. Furthermore, plaintiff has not offered any evidence that defendant ever sought temporary executive officer applicants for the vacant executive officer position or sought to fill the position. In fact, defendant never appointed anyone to the temporary executive officer position. The position was filled with a permanent executive officer just a few months after the vacancy arose. In sum, plaintiff has failed to establish that he applied for a vacant position which the employer was seeking to fill, was rejected despite his qualifications, or that the employer continued to seek applicants. Therefore, he has failed to make out a prima facie case.

Plaintiff claims that "it has always been a Smithsonian practice to appoint a temporary executive officer when the executive officer position was vacated. Such vacancies have always been filled by White and Black employees." Pl.Opp., Ex. 1, Devera Aff. ¶ 17. Plaintiff argues that defendant only deviated from this "practice" in order to avoid offering a temporary position to an Asian such as plaintiff. Plaintiff's experiences as a Smithsonian guard do not provide him with personal knowledge of Smithsonian hiring policy, and he has provided no evidence to support his assertion. *Cf. Londrigan v. FBI,* 670 F.2d at 1174–75. In addition, absent any evidence that he applied for and was rejected for a position that was available and for which he was qualified, plaintiff has failed to make out a prima facie case. *Kinsey v. First Regional Securities, Inc.,* 557 F.2d at 836.

Plaintiff has not offered any evidence or even any persuasive reason to infer that defendant chose not to appoint a temporary executive officer because to do so would have necessitated offering the position to plaintiff, the most senior officer in his guard company. The executive officer position was only vacant for a short period of time and nothing, except for plaintiff's unsupported allegations, indicates that the Smithsonian varied from its ordinary practice by leaving the position open for fewer than four months while it chose a permanent replacement officer.

Plaintiff plainly has not established a prima facie case of disparate treatment regarding defendant's failure to appoint plaintiff as a temporary executive officer to fill the vacancy left open by retiring Lieutenant Wrenn.

For the reasons stated in this Memorandum Opinion, the Court grants summary judgment for defendant on plaintiff's claims of retaliatory discipline in November 1988 and March 1989 and of denial of promotional opportunities for failing to appoint plaintiff to a temporary executive officer position in 1989. For the reasons given from the Bench, the Court denies summary judgment on plaintiff's claim of discriminatory failure to promote in 1987.

SO ORDERED.