Jeffrey C. TAYLOR, Plaintiff,

v.

Mark GEARAN, Director, United States Peace Corps, et al., Defendants.

Civil Action No. 96–1800(PLF).

United States District Court, District of Columbia.

Sept. 14, 1997.

Jeffery C. Taylor, Baltimore, MD, pro se.

Roderick Thomas, Asst. U.S. Atty., Washington, DC, for Defendant.

*OPINON*

PAUL L. FRIEDMAN, District Judge.

Jeffery C. Taylor brings this action under the Rehabilitation Act of 1973, 29 U.S.C. § 701; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; 42 U.S.C. § 1983; and the equal protection and due process clauses of the United States Constitution; he also alleges various common law torts. At bottom, he challenges the Peace Corps' conclusion that he is not medically qualified for a position as an overseas volunteer. Defendants have moved to dismiss on a variety of grounds or for summary judgment.[1]

## I. BACKGROUND

In 1992, plaintiff applied for a position as a Peace Corps Volunteer ("PCV"). After plaintiff's 1992 application lapsed, the Peace Corps requested that he file a new application and he did so in August 1993. In this application, plaintiff responded in the negative to all questions regarding whether he had ever undergone psychiatric or psychological counseling or treatment. Defs.' Statement of Material Facts, ¶¶ 1-3.

In February 1994, the Peace Corps notified plaintiff that he was preliminarily eligible for a position. Three months later, on May 11, 1994, plaintiff was determined to be medically qualified for service. Defs.' Statement of Material Facts, ¶¶ 4, 5. Plaintiff received two placement offers—Lesotho and Cameroon. Plaintiff declined the first placement and accepted the Cameroon placement on May 24, 1994. *Id.* at ¶ 8.

As part of the security and legal eligibility check, the Peace Corps performed a National Agency Check ("NAC"), without which no applicant is eligible. *See* 22 C.F.R. § 305.3.[2] In a NAC, a federal agency requests that all other federal agencies provide any information they have about certain persons. In the course of plaintiff's NAC, the Air Force discovered a 1979 report on plaintiff prepared by the Chief of the Mental Health Clinic at Tyndall Air Force Base. After plaintiff had been offered the Cameroon placement and after he had accepted it, the Peace Corps Office of Placement received this report and forwarded to the Office of Medical Services. Defs.' Statement of Material Facts, ¶¶ 9, 19–20; *see* Administrative Record ("A.R.") at 431.[3]

The 1979 Air Force report stated that plaintiff suffered from a "[p]ersonality disorder, severe, mixed, with hypomanic schizoid, and narcissistic aspects. Motivation and thought pattern are mixed and disorganized." A.R. at 557. The report labeled this disorder "chronic" and stated that it revealed itself "through habitual patterns of behavior which interfere with adequate adjustment and cause conflict with the environment." *Id.*

On the basis of this diagnosis, plaintiff was honorably discharged from the Air Force on April 18, 1979. The discharge was "coded" to prevent plaintiff's reenlistment or his enlistment in the reserves. Defs.' Statement of Material Facts, ¶¶ 15, 16; Pl.'s Response in

---

1.  Defendants are Mark Gearan, the current Director of the U.S. Peace Corps and the Director at the time this lawsuit was filed; Dr. David Gootnick, Director of the Office of Medical Services, U.S. Peace Corps; and Dr. Michael Silvers, Ms. Marilyn Krasner and Ms. Charlene Dawson, members of the U.S. Peace Corps Medical Review Board. All but Director Gearan, who is sued only in his official capacity, are sued in both their individual and official capacities.

2.  22 C.F.R. § 305.3 provides:
    Section 22 of the Peace Corps Act states that to ensure enrollment of a Volunteer is consistent with the national interest, no applicant is eligible for Peace Corps Volunteer service without a background investigation. The Peace Corps

requires that all applicants accepted for training have as a minimum a National Agency Check. Information revealed by the investigation may be grounds for disqualification from Peace Corps service.

3.  There is a dispute as to the earliest date on which the Peace Corps may have received the NAC. Plaintiff contends that the NAC was sent to the Peace Corps on July 6, 1994. A.R. at 376. The Peace Corps maintains that the NAC arrived on August 8, 1994. A.R. at 431. The dispute is irrelevant to this discussion because both dates are after the Peace Corps offered plaintiff a position that he had accepted.

**4**

Opp'n to Defs.' Mem. of Points and Authorities, 4–5, 14.[4]

On August 10, 1994, defendant Charlene Dawson, Peace Corps Screening Nurse in the Office of Medical Services, forwarded the 1979 report to defendant Marilyn Krasner, a Peace Corps Mental Health Consultant. Defs.' Statement of Material Facts, ¶ 20. Based on her review of the record, Ms. Krasner determined that plaintiff would be at an "extremely high risk for symptom exacerbation" if he were to serve overseas because of the "stressful environment potential" in the Peace Corps and overseas. Id. at ¶ 21; A.R. at 142. Defendant Michael Silvers, a Peace Corps Medical Advisor, reviewed Ms. Krasner's report, concurred with the assessment and determined that plaintiff should be medically disqualified. Defs.' Statement of Material Facts, ¶ 23; A.R. at 122.

On August 10 and 11, 1994, defendant Dawson informed plaintiff orally and in writing that he was no longer considered medically qualified, effectively withdrawing the Peace Corps' offer to plaintiff. Defs.' Statement of Material Facts, ¶¶ 24, 25; A.R. at 155 (letter to plaintiff dated August 11, 1994). Ms. Dawson also notified plaintiff of his right to appeal and informed plaintiff that a current psychiatric evaluation would be needed for an appeal. Defs.' Statement of Material Facts, ¶¶ 26, 27; A.R. at 155. Plaintiff provided a current psychiatric evaluation by November 1994. Defs.' Statement of Material Facts, ¶ 28. The evaluation he submitted was generally favorable. It stated:

> The mental status examination revealed a thin, neatly dressed, cooperative, talkative male. He [sic] mood was euthymic and affect was anxious. He denied suicidal or homicidal thought.... His thoughts were coherent and appropriate. He was alert and oriented to person, place and time. His memory and concentration were adequate, and there were no cognitive deficits.
>
> Mr. Taylor was found to be a well functioning gentleman without evidence of a major psychiatric disorder.... He demonstrates no family or work interrelational problems.

A.R. at 158–59 (letter from Dr. James Harold to Charlene Dawson, dated November 7, 1994). The evaluation also mentioned a previous evaluation for stress that had not been disclosed on plaintiff's application for a PCV position. Id. Defendant Dawson requested information regarding this prior evaluation but plaintiff supplied no further documentation. Defs.' Statement of Material Facts, ¶¶ 31–32.

In December 1994, defendant Dawson advised plaintiff that, after further review of the information it had, the Peace Corps had determined that he still was not medically qualified for service. Defs.' Statement of Material Facts, ¶ 33. Plaintiff requested then–Director of the Peace Corps Carol Belamy to render a decision in his case. Id. at ¶ 34. Plaintiff provided no additional records. Id. Defendant David Gootnick, Director of the Office of Medical Services, reviewed plaintiff's record and concluded that based on plaintiff's psychological record he was not medically qualified and so notified plaintiff on February 16, 1995. Id. at ¶ 36.

Shortly after receiving the initial adverse decision in August 1994, plaintiff initiated an administrative complaint under the Peace Corps' American Diversity Program. Defs.' Statement of Material Facts, ¶ 37. After informal counseling, he filed a formal complaint in April 1995. Id. at ¶ 38. His formal complaint alleged discrimination based on race and perceived mental disability. Id. at ¶ 39. An investigation was conducted, and a report of investigation was issued; plaintiff was afforded the opportunity to supplement the report but did not do so. Id. at ¶¶ 40–41.

Plaintiff filed the instant suit on July 30, 1996, alleging discrimination based on a record of and/or a perception of a mental disability, discrimination based on race, the denial of equal protection and due process and violations of state and federal law.

## II.  MOTION TO DISMISS

The defendants whom plaintiff has sued in their individual capacities—Dr. Gootnick, Dr. Silvers, Ms. Krasner and Ms. Dawson—

---

4. Plaintiff denies contemporaneous knowledge of the coding of his discharge at the time of the discharge. He claims to have discovered the coding at some later time. Pl.'s Affidavit, 2–3.

move to dismiss the claims against them on a number of grounds.

■ First, defendants maintain that they were never served properly with the summons and complaint in this case and that this Court therefore is without personal jurisdiction over them. *See* Rule 4, Fed.R.Civ.P. As defendants point out, the burden of establishing personal jurisdiction is on plaintiff. *See Reuber v. United States,* 750 F.2d 1039, 1052 (D.C.Cir.1984). The only evidence of any service on defendants is plaintiff's claim that Mr. Burn Reist, the Peace Corps' Executive Secretary, and "[B] Spencer," a Peace Corps resident agent, signed for all defendants in their individual and official capacities. Pl.'s Response in Opp'n to Defs.' Mot. to Dismiss at 6; Pl.'s Affidavit of Service of Process–Return, Docket Nos. 6, 9 (Dec. 2, 1996); *see* Defs.' Mem. of Points and Authorities, Ex. 1.

■ It is established that a defendant's service on his or her employer or its agents is not sufficient to effect personal service on an individual being sued in his or her personal capacity. *See Simpkins v. District of Columbia,* 108 F.3d 366, 368–69 (D.C.Cir.1997) (government employees sued personally for money damages must be personally served under Rule 4(e), Fed.R.Civ.P.); *Navy. Marshall & Gordon, P.C. v. United States International Development–Cooperation Agency,* 557 F.Supp. 484, 489–90 (D.D.C.1983) (federal agents sued in individual capacities for money damages must be served personally and not by certified mail or service upon offices in which defendants work); *Betlyon v. Shy,* 573 F.Supp. 1402, 1405 (D.Del.1983) (same). Plaintiff has failed to demonstrate that he has personally served the defendants sued in their individual capacities.

Second, regardless of service, these defendants argue that they are entitled to official immunity with respect to any claim asserted against them in their individual capacities because plaintiff's allegations do not establish

that their conduct violated any clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The burden is on plaintiff to demonstrate a *prima facie* case of defendants' knowledge of impropriety. *Krohn v. United States,* 742 F.2d 24, 31–32 (1st Cir.1984). With the exception of the Rehabilitation Act and Title VII claims, plaintiff has failed to demonstrate or even allege that defendants have violated any clearly established right of plaintiff or acted unreasonably in regard to the matter about which plaintiff complains.

■ Third, as defendants point out, there can be no *Bivens*-type remedy for constitutional violations against individuals where Congress has created a comprehensive statutory scheme to provide relief from the government. *See Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980). In this action, plaintiff essentially seeks relief for alleged employment discrimination based on disability and race. Because Congress has provided a comprehensive remedial scheme, there is no legitimate *Bivens* claim before the Court. *See Brown v. General Services Admin.,* 425 U.S. 820, 834–35, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976) (Title VII is comprehensive scheme); *Rattner v. Bennett,* 701 F.Supp. 7, 9 (D.D.C.1988) (Rehabilitation Act is comprehensive scheme). Furthermore, because Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment and the Rehabilitation Act of 1973 is the exclusive remedy for disability discrimination by the government, plaintiff's equal protection claim must also be dismissed. *See Ethnic Employees of Library of Congress v. Boorstin,* 751 F.2d 1405, 1415 (D.C.Cir.1985) (Title VII is exclusive remedy); *Paegle v. Dep't of the Interior,* 813 F.Supp. 61, 66–67 (D.D.C.1993) (Rehabilitation Act is exclusive remedy).[5]

5. As for plaintiff's due process claim, plaintiff does not have a protected property interest in the Peace Corps job because there is no "independent source sufficient to support a claim of entitlement to the benefit." *Carmi v. Metropolitan St. Louis Sewer District,* 620 F.2d 672, 675–76 (8th Cir.1980) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). The regulations make clear that no applicant will be considered eligible for a Peace Corps position until a NAC is complete, and information on the NAC may serve to disqualify an applicant. *See* 22 C.F.R. § 305.3. Because the NAC was not complete when plain-

■■ Fourth, to the extent that plaintiff alleges state common law torts, he must sue the United States, which is the only proper defendant, and then may do so only to the extent that Congress has waived sovereign immunity for suit in the Federal Tort Claims Act. *United States v. Smith,* 499 U.S. 160, 166, 111 S.Ct. 1180, 1185, 113 L.Ed.2d 134 (1991); *see Simpkins v. District of Columbia,* 108 F.3d at 371.[6]

■ For all of these reasons, all claims against the defendants sued in their individual capacities, except for the Rehabilitation Act and Title VII claims, must be dismissed. With respect to the latter, while an individual may be a nominal defendant, relief may be obtained against the employer only. *Gary v. Long,* 59 F.3d 1391, 1399 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995); *Hackley v. Roudebush,* 520 F.2d 108, 115 n. 17 (D.C.Cir.1975); *Nelson–Cole v. Borg–Warner Security Corp.,* 881 F.Supp. 71, 73–74 (D.D.C.1995); *Rattner v. Bennett* 701 F.Supp. at 9. Accordingly, all claims against defendants, save Director Gearan, will be dismissed.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed. R.Civ.P. Material facts are those that "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences

are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513; see also *Washington Post Co. v. United States Dep't of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir.1989); *Ross v. Runyon,* 859 F.Supp. 15, 21–22 (D.D.C.1994), *aff'd,* 1995 WL 791567 (D.C.Cir.1995).

■ Even in employment discrimination cases, however, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *see Johnson v. Digital Equipment Corp.,* 836 F.Supp. 14, 15 (D.D.C.1993) (in discrimination case, plaintiff cannot rest on mere allegations of pretext but must point to genuine issues of material fact in the record).

### IV. THE REHABILITATION ACT

The Rehabilitation Act provides that "[n]o otherwise qualified individual . . . shall, solely by reason of his [or her] handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency. . . ." 29 U.S.C. § 794(a). The Act defines an "individual with a disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having

tiff was provisionally offered the job, he lacked a protected property interest in the PCV position. *See Orange v. District of Columbia,* 59 F.3d 1267, 1273–75 (D.C.Cir.1995).

**6.** Furthermore, because it appears that the individual defendants were acting within the scope of their employment, 28 U.S.C. § 2679(d)(1), not

only must plaintiff proceed under the Federal Torts Claim Act against the United States only, but he must also first fulfill the administrative requirements of the FTCA. 28 U.S.C. § 2675(a); *see also GAF Corp. v. United States,* 818 F.2d 901, 904 (D.C.Cir.1987).

such an impairment." 29 U.S.C. § 706(8)(B). "Major life activities" are illustrated by the regulations as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); *see* 29 C.F.R. §§ 1613.702(c), 1630.2(i).

In order to establish a *prima facie* case of discrimination under the Act, a plaintiff must show (1) that plaintiff is an individual with a disability within the meaning of the Act, (2) that plaintiff is otherwise qualified for the job, and (3) that plaintiff was adversely treated or denied the benefits of his position solely because of his handicap. *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *see also Gaskins v. Runyon*, 921 F.Supp. 779, 781 (D.D.C.), *aff'd*, 1994 WL 704080 (D.C.Cir. 1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 60 (1995). The inquiry into whether a person is disabled is an individualized one and must be determined on a case-by-case basis. *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986).[7]

### A. *Individual with a Disability*

■ Because both plaintiff and defendants deny that plaintiff is disabled, Pl.'s Response in Opp'n to Defs.' Mem. of Points and Authorities at 13; Defs.' Mem. of Points and Authorities at 24–26, plaintiff must show either (a) that he has a record of an impairment and that such impairment substantially limits a major life activity, or (b) that defendants regarded him as being "impaired" and that they perceived that impairment as substantially limiting a major life activity. 29 U.S.C. § 706(8)(B). In other words, the

tests for having a record of or being perceived as disabled mirror the test for having an actual disability in that only recorded or perceived impairments that substantially limit a major life activity will bring plaintiff under the Act.

■ The 1979 Air Force report creates a record of an impairment, a record that will follow plaintiff any time he applies for a federal job for which a NAC is performed. There is no evidence, however, that plaintiff's record of a personality disorder has ever substantially prevented him from performing any major life activity.[8] Since leaving the Air Force 18 years ago, plaintiff attended law school, became a member of the Maryland bar and now works as a Legal Aid attorney in Baltimore. He has provided no evidence of any adverse impacts in employment as a result of his unsuccessful effort to obtain a position as an overseas PCV. Nor has plaintiff shown that the alleged personality disorder, if any, has substantially limited any other major life activity. He therefore has not made out a prima facie case of having a record of a disability.

■ An employer will be found to have "regarded" an employee as disabled where the employer perceives or treats its employee as substantially impaired in a major life activity. *See Andrews v. State of Ohio*, 104 F.3d 803, 809–10 (6th Cir.1997); *Daley v. Koch*, 892 F.2d 212, 215–16 (2d Cir.1989). This category includes persons who have an impairment that substantially limits a major life activity "only as a result of the attitudes of others toward such impairment." 45 C.F.R. § 84.3(j)(2)(iv); *see* 29 C.F.R. § 1630.2(*l*)(2).[9] In order to show that the

---

7. Plaintiff's ultimate burden therefore is substantial because "[m]any impairments do not have an impact on an individual's life to the degree that they constitute disabling impairments." 29 C.F.R. pt. 1630, App. § 1630.2(j). Furthermore, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *see Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 723 (2d Cir.1994) ("An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one," so that an employee with asthma who was discharged because she could no longer work in the basement was not dis-

abled), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

8. Although the alleged personality disorder was the reason the Air Force provided for plaintiff's discharge, plaintiff claims that he wanted out of the military and engaged in a course of activity to achieve such a goal. Pl.'s Affidavit at 1. The alleged impairment, therefore, appears not to have been the sole reason for his separation from the Air Force.

9. The Code of Federal Regulations defines an individual who "is regarded as having such an impairment" as someone who

Peace Corps regarded him as disabled, plaintiff must demonstrate not only that it found him to be unqualified to be an overseas PCV but also that it considered his impairment "to foreclose generally the type of employment involved." *Chandler v. City of Dallas*, 2 F.3d at 1392 (quoting *Forrisi v. Bowen*, 794 F.2d at 933–34).

Although defendants deny that plaintiff is disabled, it cannot legitimately be disputed that the Peace Corps' Office of Medical Services regarded plaintiff as impaired. Defendants Krasner and Silvers disqualified plaintiff because they determined that the symptoms of his previously diagnosed personality disorder could be exacerbated by overseas service:

> Assessment by M. Krasner: ... [B]ased on [the 1979 Air Force mental health report] appl[icant] would be [at] extremely high risk for symptoms to exacerbate in stressful (potential) [Peace Corps] environment.... Dr. Silver's ... Decision: not medically qualified for [Peace Corps] service; no current evaluation needed.

A.R. at 121–22 (Office of Medical Services File); *see* A.R. 144.

Defendants maintain, however, that they did not perceive plaintiff's impairment as one that substantially limited one or more of plaintiff's major life activities and therefore plaintiff cannot qualify as an individual with a disability under the Act. Defendants point out that plaintiff was kept only from a narrow range of employment—overseas PCV—and that such a narrow limitation is not enough to justify the Court in concluding that defendants treated plaintiff as disabled. The record before the Court reflects, however, that defendants were deeply troubled by plaintiff's disorder as described in the 1979 Air Force report.

Defendant Silvers declared:

> [B]ased on the Air Force diagnosis of Mr. Jeffery Taylor of February 9, 1979, he would not be medically qualified for Peace Corps Service.... A diagnosis of personality disorder is something a person carries with him or her throughout life. Some people manage the disorder while others do not.
>
> ... Someone with that type of disorder [the Air Force diagnosis of mixed personality disorder] might not know he had it and would not admit he had it.
>
> \* \* \* \* \* \*
>
> ... [T]he Air Force diagnosis ... is a very severe one and we have had a lot of trouble with people in the Peace Corps who had those ailments.

A.R. at 434–35 ¶¶ 2–5 (Affidavit of Michael Silvers). Defendant Gootnick stated, "A personality disorder is not something you treat and it goes away. It's [sic] course waxes and wanes.... [A]s a personality disorder is not something that can be fully resolved, all personality disorders, as with other psych[iatric] or medical disorders, are fully considered on a case by case basis." A.R. at 438–39 ¶¶ 4,7 (Affidavit of David Gootnick).

As defendants' own affidavits attest to their belief that the problems that can arise from the diagnosed personality disorder are severe, it appears that there is at least a genuine issue of material fact as to whether defendants perceived plaintiff's alleged personality disorder as substantially limiting one or more of his major life activities. Summary judgment therefore cannot be granted on this basis.

### B. *Plaintiff as Otherwise Qualified*

The Supreme Court has defined an otherwise qualified person as "one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1978). "A person who has a record of, or is regarded as having, an impairment may at present have no actual incapacity at all. Such a

---

(A) has a physical or mental impairment that does not substantially limit major life activities but is treated ... as constituting such a limitation; (3) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (C) has none of the impairments ... but is treated ... as having a substantially limiting impairment. 45 C.F.R. § 843(j)(2)(iv); *see* 29 C.F.R. § 1630.2(*l*).

person would be exactly the kind of individual who could be 'otherwise qualified' to participate in covered programs." *Id.* at 405–06 n. 6, 99 S.Ct. at 2366 n. 6. The 1979 Air Force report, indicating a mental health problem, is old. A recent report reflects no mental health problem. Plaintiff's actual mental health at the present time therefore is an issue of fact for trial.

### C. *Disability as the Sole Reason for the Adverse Decision*

■ The Peace Corps expressly informed plaintiff that he was no longer eligible for service as a PCV for medical reasons. While defendants now raise other reasons for plaintiff's disqualification, a fact-finder could well conclude that the sole basis for the disqualification was defendants' perception that plaintiff was disabled and that the other reasons were pretextual. *See Heilweil v. Mount Sinai Hospital*, 32 F.3d at 722.

Assuming that plaintiff has made out a prima facie case, defendants argue that they could not accommodate him. Given the evidence in the record that plaintiff was disqualified because of a 15–year–old report and that the current evaluation showed no *impairment*, a reasonable fact-finder could conclude that plaintiff was not so impaired that accommodation was impossible. *See Gaskins v. Runyon*, 921 F.Supp. at 783–84. For these reasons, summary judgment will be denied with regard to plaintiff's Rehabilitation Act claim.

### V. TITLE VII OF THE CIVIL RIGHTS ACT

Plaintiff alleges that he was discriminated against based on his race. In support of this claim he argues that the Peace Corps denies PCV status to African–American applicants at twice the rate of non-African-American applicants. Pl.'s Response in Opp'n to Defs.' Mot. to Dismiss at 7. He also alleges that he spoke with Ms. Kirby Mullen, Legal Liaison to the Office of Medical Services, in early December 1994 about the racist implications of his disqualification. Pl.'s Response in Opp'n to Defs.' Mem. of Points and Authorities at 10. Plaintiff alleges that Ms. Mullen was aware that he was an African American

and that she was in direct consultation with the Office of Medical Services during the informal and formal administrative reviews of his case. *Id.* at 25. Plaintiff also maintains that only three percent of overseas PCV's are African Americans. *Id.* at 26. Finally, plaintiff avers that he was told by Peace Corps volunteers and employees that what happened to him has happened to others, especially African Americans. Pl.'s Affidavit at 4.

■ In order to make out a claim of employment discrimination, plaintiff carries the initial burden of showing that the Peace Corps' actions, if unexplained, were more likely than not based on race. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). On their face, plaintiff's allegations do not come close to supporting a Title VII claim of disparate treatment or disparate impact. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973); *Dothard v. Rawlinson*, 433 U.S. 321, 328–30, 97 S.Ct. 2720, 2726–27, 53 L.Ed.2d 786 (1977). Even if they did, they are wholly inconsistent with his claim that defendants disqualified him solely because of the 1979 Air Force report which is itself a non-pretextual, non-race-based medical reason for defendants' decision. Judgment therefore must be entered for defendants on the Title VII claim. An order consistent with this Opinion is entered this same day.

SO ORDERED.

### *ORDER*

This case is before the Court on Defendants' Motion to Dismiss on Behalf of the Individual Defendants in Their Individual Capacities and Defendants' Motion to Dismiss and Motion for Summary Judgment on Behalf of the Peace Corps and the Individual Defendants in Their Official Capacities. For the reasons stated in the accompanying Opinion issued this same day, it is hereby

ORDERED that defendants' motions are GRANTED in part and DENIED in part.

1. All of the individual defendants in their individual capacities are dismissed from this case.

2. The equal protection claim is dismissed against all defendants.

3. The due process claim is dismissed against all defendants.

4. The federal and state law common claims are dismissed against all defendants.

5. Judgment will be entered for all defendants on the Title VII claim and it is dismissed.

6. The Rehabilitation Act claim against Mark Gearan, Director, U.S. Peace Corps, in his official capacity is not dismissed; nor is judgment entered for defendant Gearan on this remaining claim which will proceed to trial; it is

FURTHER ORDERED that the parties shall meet and confer and submit a joint report under Rule 206 of the Rules of this Court on or before October 16, 1997; and it is

FURTHER ORDERED that a status conference is scheduled for October 22, 1997 at 9:00 a.m.

SO ORDERED.